54 CCPA

**AMERICAN CYANAMID COMPANY,**
Appellant,

v.

**HUMBLE OIL & REFINING CO.,**
Appellee.

**Patent Appeal No. 7641.**

United States Court of Customs
and Patent Appeals.

Nov. 17, 1966.

———◆———

Theodore C. Virgil, Stamford, Conn. (William P. Spielman, Washington, D. C., of counsel), for appellant.

Browne, Schuyler & Beveridge, Washington, D. C. (Francis C. Browne, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board sustaining the opposition by Humble Oil & Refining Company to the grant of a registration on trademark application serial No. 95,544, filed April 22, 1960, for a "wetting agent for agricultural purposes" by appellant, American Cyanamid Company. The mark sought to be registered by appellant is "VATSOL." Use by appellant and a predecessor in title since August 20, 1932 and ownership of Registration No. 319,138 [1] are asserted.

Appellee-opposer is the registrant of "VARSOL" for refined, semirefined, and unrefined oils made from petroleum, both with and without admixture of animal, vegetable, or mineral oils, for illuminating, burning, power, fuel, and lubricating purposes; [2] for hydrocarbon solvents in the nature of turpentine substitutes; [3] for hydrocarbon solvents for cleaning and detergent purposes; [4] and for hydrocarbon solvents for chemical, medicinal, and pharmaceutical purposes.[5]

The record discloses that appellee sells a petroleum product known generally as Stoddard solvent under the mark VARSOL, which product is widely used in the paint trade as a solvent as well as in industry generally for cleaning and other purposes. VARSOL is sold to the farm trade and to the general public for use as a solvent. VARSOL was used as a mark in 1928 by appellee's predecessor to identify this product. The record supports the finding of the board that the VAR-

---

1. Issued Nov. 20, 1934 for the mark "VAT-SOL" for a wetting agent for accelerating removal of lead and arsenic residues from apples; renewed.

2. Reg. No. 244,001, issued July 3, 1928 to a predecessor; renewed.

3. Reg. No. 250,562, issued Dec. 11, 1928 to a predecessor; renewed.

4. Reg. No. 250,866, issued Dec. 18, 1928 to a predecessor; renewed.

5. Reg. No. 251,799, issued Jan. 15, 1929 to a predecessor; renewed.

SOL solvent has been sold by appellee and its predecessor since 1946 for use as a weed killer in fields planted to produce agricultural crops. These sales have been extensive and substantial, and VARSOL solvent has been promoted by means of demonstrations as well as referred to in magazines circulated to farmers. It is used extensively as a component of chemical sprays and chemical pesticides for the farm trade. There is no doubt that the VARSOL solvent has many and varied uses and, as stated by the board, "the nature of the product has never changed and the specifications for 'VARSOL' solvent today are substantially the same and almost identical to the specifications of that product in 1928." The long, widespread use and acceptance of the product is attested by the fact that in 1939 sales approximated 20,000,000 gallons with a value of $2,500,000; in 1950 sales approximated 53,000,000 gallons with a value of $6,500,000 and, when testimony was taken in 1962 it was revealed that for the two preceding years sales approximated 55,000,000 gallons having a value of about $8,000,000 per year.

Evidence adduced by appellant discloses that it has, since at least as early as 1933, used VATSOL as a trademark for wetting agents. At the time of its advent upon the market the VATSOL product was sold as a wetting agent to accelerate removal of lead and arsenic residue from apples and promoted for such use by personal demonstrations and literature circulated to growers. It appears that almost all of the sales of VATSOL wetting agents have been to formulators of insecticides, fungicides, and herbicides, with most of such sales being made to the same customers, totaling less than twenty-five formulators. There is testimony of record that VATSOL was sold for use in pesticidal compositions as early as 1932 and promoted as wetting agents for use in agricultural sprays and dust during 1939 and 1941.

Sales of VATSOL as a wetting agent in no respect compare in scope of area served, breadth of use and volume with the dispensation and widespread utilization of the VARSOL solvent. The high in sales for the VATSOL wetting agents was $51,641 in 1946, with a low of $4,312 in 1947. In 1962 these sales were computed at $24,788. Appellant's identical product is sold for industrial uses under the trademark AEROSOL.

Comparison of the competing marks VARSOL and VATSOL leaves little or no room for argument as to their confusingly similar appearance. The only alphabetical distinction resides in the third letter of each mark. The products promoted and sold under each mark are used as, or constitute ingredients in, herbicides (weed killers). In appellant's pending application, the goods involved are broadly described as "wetting agents for agricultural purposes," while appellant's prior registration (319,138) is limited to a "wetting agent for accelerating the removal of lead and arsenic residues from apples," thus indicating a circumscribed scope with reference to channels of trade, classes of purchasers and ultimate uses for the goods covered. Further, the record indicates that appellant recommended that appellee's goods under the mark VARSOL be used with its goods, which are sometimes sold as AEROSOL and sometimes sold as VATSOL, the goods being used indiscriminately. More than half of appellant's goods sold under VATSOL are in liquid form. Appellee's goods under VARSOL are also sold in liquid form. The goods of both parties under their respective marks are sold in drums or other small containers. The record supports the conclusion that some ultimate users of the products sold under the mark VATSOL are the same class of users, namely, farmers, to whom the VARSOL solvent is sold. Both products are sold in the industrial as well as in the agricultural field.

We must therefore agree with the board that:

> There seems to be no doubt that "VATSOL" and "VARSOL," to the extent that both are used on products for agricultural purposes, so resemble

each other as to be likely to cause confusion, mistake or deception. The question, then is which of the parties has superior rights in its mark.

We think it pertinent to here point out that appellee's registration of VARSOL which issued on January 15, 1929 covered hydrocarbon solvents for "chemical" purposes. In this connection the board stated that:

The term "chemical purposes" is inclusive of "agricultural chemical purposes." Within the contemplation of the description of goods for which applicant seeks registration, namely, "wetting agents for agricultural purposes," opposer's product being inclusive of "agricultural chemical purposes" would constitute a solvent for agricultural purposes. * * *

The record is clear that appellee's goods are used as solvents for a variety of purposes, including use as a herbicide or for other agricultural purposes. Such use would seem clearly to be embraced by the expression "hydrocarbon solvents for chemical * * * purposes."

We think it is well settled that the prior user and owner of a registered trademark is entitled to prevent subsequent registration by another of his mark, or one confusingly similar thereto, for any product which might reasonably be expected to be produced by the registrant in the normal expansion of his trade. See, e. g., American Drill Bushing Co. v. Rockwell Mfg. Co., 342 F.2d 1019, 52 CCPA 1173.

In our view the board properly applied this principle to the factual situation here presented. The board reasoned as follows:

Opposer's VARSOL solvent is a product of great versatility—it is an industrial product but also a product useful in the home, it can be used on the farm and it can be used in an office, in and of itself it is a final product and it is also an ingredient useful in the manufacture of other goods. Opposer's product is a solvent, a dry cleaning agent, a thinner, a herbicide, and a weedicide. The class of purchasers for opposer's product is almost universal. As a solvent for cleaning and detergent purposes, opposer's product constitutes a product useful on the farm for the cleaning of farm buildings, machinery and the like. So when opposer introduced "VARSOL" solvent on the market in 1928, the farmer was a prospective purchaser for said product. Opposer's product has not changed since 1928—only additional uses have been found therefor. The farmer who purchased "VARSOL" as a solvent in 1928 is the same purchaser who bought "VARSOL" for use as a weedicide in 1946 and thereafter. Opposer is merely doing that which it has been doing since 1928, namely selling "VARSOL" solvent for "agricultural purposes" (in the sense of the term used by applicant in its description of goods). There is here a natural expansion of trade under the mark "VARSOL" and opposer is entitled to a holding of priority.

For the foregoing reasons, we find no reversible error in the decision of the board sustaining the opposition. The decision of the board is affirmed.

Affirmed.

MARTIN, Judge, participated in the hearing of this case but died before a decision was reached.