I. T. S. INDUSTRIA TESSUTI SPECIALI, Plaintiff,

v.

The AERFAB CORP., Allan Goldfarb Corp., Raven Mills Corp. and Lamont International Corp., Defendants.

No. 66 Civ. 3813.

United States District Court
S. D. New York.

May 16, 1967.

Isaac Henkoff, Ruben Schwartz, New York City, for plaintiff.

Mannis Neumann, Stanley Wolder, Newmann, Aronson & Neumann, New York City, for defendants.

MOTLEY, District Judge.

*Motion for Preliminary Injunction*
*Findings of Fact and*
*Conclusions of Law*

Plaintiff seeks a preliminary injunction enjoining defendants from infringing plaintiff's trademark and enjoining acts of unfair competition on the part of defendants. This court has jurisdiction of the complaint seeking similar permanent relief and damages under 28 U.S.C. § 1338(a) and (b), and 15 U.S.C. § 1121, and 28 U.S.C. § 1332.

Plaintiff, I. T. S. Industria Tessuti Speciali, is an Italian corporation with no office for the transaction of business in the State of New York or anywhere else in the United States. Plaintiff's business is the manufacture of a laminated plastic and cloth fabric. It has used the name or legend AERPEL to identify this fabric since December, 1961. Plaintiff and its American sales agents have continuously used, since November 10, 1963, and still use, the name and legend AERPEL in the United States in connection with the advertising, sale, distribution and marketing of this fabric product. This trademark has been prominently displayed, applied to and printed upon plaintiff's product and wrappers. C. Haedke & Co., Inc., plaintiff's sole importer and distributor in the United States spent $40,000 in 1964 promoting AERPEL, $12,500 in 1965, and $9,000 in 1966.

On or about June 15, 1964, plaintiff made application to the United States Patent Office to register the trademark AERPEL for heavy-duty laminate of cloth and plastic in the nature of imitation leather for general use in the industrial arts in Class "1". Industrial arts includes the manufacture, distribution and sale of fabrics.

On or about March 22, 1966, the Patent Office granted plaintiff's application and issued a certificate of trademark registration of the name AERPEL. Plaintiff's registration is valid and subsisting, uncancelled and unrevoked.

Defendant, The Aerfab Corp., is a domestic corporation organized under the laws of the State of New York. It has manufactured and distributed for sale a fabricated, laminated plastic and cloth fabric under the tradename AERFAB since September 4, 1964, or just prior thereto. This defendant, formerly known as Hollywood Mills Meta-Lite Corp., caused its name to be changed to The Aerfab Corp. on or about September 1, 1965. Defendant has a trademark application for the registration of the name AERFAB pending in the Patent Office. The application was published in the Official Gazette of the Patent Office on January 10, 1967. Plaintiff claims that the name AERFAB is confusingly similar and infringes its trademark.

Defendants, Allan Goldfarb Corp., Raven Mills Corp., and Lamont International Corp., are alleged to be or to have been in the business of manufacturing, selling and distributing a laminated plastic and cloth fabric in the nature of imitation leather in New York and throughout the United States in general, and to be or to have been in competition with plaintiff with respect to such manufacture, distribution and sale. The Allan Goldfarb Corp. claims that it has never been and is not now in the business of manufacturing, producing and selling materials of any kind similar to the synthetics manufactured and sold by The Aerfab Corp. Raven Mills Corp. and Lamont International Corp. state that they are both corporate shells which have not been active in any business of any kind whatsoever for more than three years and are not engaged at the present time in any business whatsoever.

Plaintiff alleges that the name AERPEL was chosen as a trademark because the phrase "AER" has the meaning of "air" in many European countries and the pharse "PEL" is derived from the Italian word for "leather". The use of the trademark, plaintiff urges, in European languages gives one the impression of a soft, pliable, leather-like material. Plaintiff further alleges that "AER"

has no meaning in the English language, especially when dealing with textiles.

The Aerfab Corp., alleges that presently there are in the United States Patent Office, thirty-one different trademarks starting with the prefix "AER" and thirty-six starting with the prefix "AIR", all of which are in the same line of business as the plaintiff and defendant or in similar allied businesses.

The Aerfab Corp. alleges that its name AERFAB is a coined English word containing "AER" and the word "fabricate". "AER" was chosen as a prefix because the fabric they make was permeable to air. The name AERFAB was adopted when this defendant's business was changed from textiles and plastics to synthetics. After this product change was made, this defendant believed it only natural to change its corporate name to The Aerfab Corp.

Plaintiff's product is being manufactured in Italy and sells at a higher price in the United States than does the product of The Aerfab Corp. Plaintiff alleges that in comparison to its product, defendants manufacture and sell an inferior and cheaper laminated plastic and cloth fabric. The Aerfab Corp. claims that its product is superior and that the price differential is due to plaintiff's additional costs of transportation and duties. Upon examination of small swatches of both fabrics, this court takes no position as to which fabric is superior because both appear to be of comparable quality.

Plaintiff claims that it and its licensed agents asked defendants to cease and desist their use of the name AERFAB but defendants have refused the demand and continue their unfair competition practice of "palming off" defendants' goods as those of plaintiff. Aerfab Corp. denies that demands were ever made and states that it first learned of the unfair competition claim upon institution of this action.

The crux of the factual issue here is whether there is evidence of unfair competition sufficient to sustain the granting of a preliminary injunction. Plaintiff's advertisements contain the name AERPEL followed by an asterisk. The asterisk after the name AERPEL in plaintiff's advertisements directs the reader's attention to the bottom of the copy where it is stated, "TM Reg App". This was used, of course, only while the application for trademark registration was pending. The Aerfab Corp. advertisements contained the name AERFAB followed by an asterisk. In this defendant's advertisements, however, the asterisk drew the reader's attention to nothing further in the copy. Defendant alleges that the usage of the asterisk leading to nothing is hardly a similarity between the parties' advertisements because the use of an asterisk is common usage in advertising and is done by dozens of firms throughout the country.

Examination of the language and phraseology of the advertising copy gives an impression of some similarity. It is to be noted, however, that the complained of language and similarity is really only language descriptive of the qualities of the competing products.

AERPEL'S advertisements contain language such as:

"the luxury look and feel of leather, yet has none of its disadvantages"; "dry cleaned safely at neighborhood cleaners"; "permanently water-repellant"; "will not crack, peel, or stiffen"; "naturally crease-resistant"; "marvelously spot-resistant"; and "highly scuff-resistant".

Defendant AERFAB'S advertisements emphasize:

"breathable leather look"; "all the appeal of supple leather—without its costs or problems"; "won't peel or crack"; "washable and dry-cleanable"; and "dirt resistant, crease resistant and permanently water repellant".

Another factor to be considered in the comparison of the advertising is that some of plaintiff's advertisements highlight the fact that the fabric is imported from Italy, whereas AERFAB

advertisements call their product the "great new American fabric."

Plaintiff also alleges that defendants are guilty of unfair competition in that defendant, The Aerfab Corp., used copies of photographs of models wearing garments made of AERPEL in its advertisements. The photographs were taken in Germany by the supplier of chemicals which are employed in the making of the laminated AERPEL fabric. Plaintiff claims to have permitted the chemical supplier to take the photographs for the purposes of advertising the chemicals and plastics, showing their uses in fabrics.

The Aerfab Corp. admits that at least one of the contested photographs appeared in an editorial about their product appearing in American Fabrics Magazine in 1966. This defendant also admits that the contested photographs were taken in Germany by Bayer Chemisch, a chemical manufacturer. The photos were given this defendant as part of a larger group by Verona Dyestuffs, the American representative of the German firm. Verona gave The Aerfab Corp. permission to use the photos.

Plaintiff and its agents have sold in excess of 600,000 yards of AERPEL in the United States since 1963. Ivy International, Ltd. and C. Haedke & Co., Inc. have carried on a promotional campaign in the United States to gain acceptance of the product. It is alleged that with the emergence of AERFAB on the market, plaintiff's sales have declined greatly. None of the details of this decline is alleged or proved.

This suit was commenced on November 10, 1966. The motion for preliminary injunction was filed on November 28, 1966. Argument on the motion was heard on February 14, 1967.

■ A party seeking a preliminary injunction has the burden of proving his right to injunctive relief pendente lite. As a part of that burden, plaintiff must establish that he is threatened with immediate irreparable injury if the injunction is not granted. Hudson Pulp & Paper Corp. v. Swanee Paper Corp., 223 F.Supp. 617, 618 (S.D.N.Y. 1963). Even if this burden is met, the party seeking the preliminary injunction is not necessarily entitled to that drastic relief. The court must balance the conveniences and possible injuries to the parties. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944). The applicant must show that it will probably succeed on the trial. Imperial Chemical Industries Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 461 (2d Cir. 1965). The reasonable likelihood that plaintiff will succeed in establishing its case on the merits is of special equitable significance where, as here, there is no specific evidence on the question of irreparable injury. Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319, 320 (3rd Cir. 1967).

■ In addition, the court, in a case of this kind, must consider whether plaintiff's trademark is worthy of protection and whether plaintiff's mark is being infringed by the defendant, W. E. Basset Co. v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966), i. e., whether there is a likelihood of confusion resulting not only from an alleged similarity of name but from similarity of presentation of products, including general appearance, price, and other nonfunctional features. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960); Haig & Haig, Ltd. v. Maradel Products, Inc., 249 F.Supp. 575 (S.D. N.Y.1966). Plaintiff must make a substantial showing to obtain a preliminary injunction. Willpat Productions v. Sigma III Corp., 227 F.Supp. 354, 357 (S.D. N.Y.1964).

Plaintiff's claim of trademark infringement arises under 15 U.S.C. § 1114(1) which provides in part:

"(1) Any person who shall, without consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale,

offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive * * *

shall be liable in a civil action by the registrant * * *."

▆ In order to establish his infringement claim, plaintiff does not have to present evidence of actual confusion, only evidence that the name adopted by defendants is so similar to his trademark as to be likely to cause confusion among reasonably careful purchasers. "The only question is whether or not the similarity of names is such as to make likely the deception of any appreciable number of ordinary prudent customers." La Touraine Coffee Co., Inc. v. Lorraine Coffee Co., 157 F.2d 115, 117 (2d Cir. 1946); Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 612 (2d Cir. 1960). It is to be noted, however, that confusion on the part of the careless or inattentive purchaser may not be disregarded in the total assessment of the evidence on this issue. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra, 281 F.2d at 761.

▆▆ The question whether there is trademark infringement must, of necessity, be based primarily upon a comparison of the marks. J. R. Wood & Sons, Inc. v. Reese Jewelry Corp., 278 F.2d 157 (2d Cir. 1960). But it is the general overall impression given by the marks which counts. Harold F. Ritchie, supra, 281 F.2d at 762. Each case alleging trademark infringement must be judged on its own facts, and citation of authorities is not very helpful, except insofar as they show the general pattern.[1] La Touraine, supra; Harold F.

I. CASES WHERE NO INFRINGEMENT FOUND:

Alumatone Corp. v. Vita-Var Corp., 183 F.2d 612, 37 CCPA 1151 (C.C.P.A.1950) (Alumatone and Alumikote);

Kraft Walker Cheese Co. v. Kingsland, 75 F.Supp. 105 (D.D.C.1947) (Vegemite and Vegex);

Miles Laboratories, Inc. v. Foley & Co., 144 F.2d 888, 32 CCPA 714 (1944) (Vitamiles and Vitabuild);

Solventol Chemical Products, Inc. v. Langfield, 134 F.2d 899 (6th Cir. 1943) (Solventol and Solvite);

Steem-Electric Corp. v. Herzfeld-Phillipson Co., 118 F.2d 122 (7th Cir. 1940) (Steem-O-Matic and Steem-Electric);

Vick Chemical Co. v. Thomas Kerfoot & Co., Ltd., 80 F.2d 73 (C.C.P.A.1935) (Vapex and Vaporub);

Thomas Kerfoot & Co., Ltd. v. Louis K. Liggett Co., 67 F.2d 214 (1st Cir. 1933) (Vapure and Vapex);

May Department Stores Co. v. Kenya Corporation, 234 F.2d 870, 43 CCPA 940 (1956) (Aristocrat and Aristosheen);

UpJohn Co. v. Schwartz, 246 F.2d 254 (2d Cir. 1957) (Syrocal and Cheracol);

Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549 (1st Cir. 1948) (Jewelite and Gemlite);

Rytex Co. v. Ryan, 126 F.2d 952 (7th Cir. 1942) (Rytex and Rynart);

S. R. Feil Co. v. John E. Robbins Co., 220 F. 650 (7th Cir. 1915) (Sal-Vet and Sal Tone);

John Morrell & Co. v. Doyle, 97 F.2d 232 (7th Cir. 1938), cert. denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415 (1938) (Red Heart and Strong Heart);

L. J. Mueller Furnace Co. v. United Conditioning Corp., 222 F.2d 755, 42 CCPA 932 (1955) (Climatrol and Clime-Matic);

Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955 (2d Cir. 1943), cert. denied, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452 (1943) (Chateau Martin and Chateau Montay);

Warner Bros. Co. v. Jantzen, Inc., 249 F.2d 353 (2d Cir. 1957) (Curvallure and A'Lure);

Castle & Cooke, Inc. v. Oulevay, S.A.. 370 F.2d 359 (C.C.P.A.1967) (Farandole and Dole);

Dan River Mills, Inc. v. Preben Mikael Aerendal Mikkelsen, 373 F.2d 743 (C.C.P.A.1967) (Dansk Form and Dan, Danstar, Dansport);

Robinson Co. v. Plastics Research & Dev. Co., 264 F.Supp. 852 (W.D.Ark. 1967) (Reb-l and Reb-l);

Hesmer Foods, Inc. v. Campbell Soup Co., 346 F.2d 356 (7th Cir. 1965), cert. denied, 382 U.S. 839, 86 S.Ct. 89, 15 L.

*Ritchie*, supra. Nevertheless, the courts have identified a number of factors which should be considered in making the determination of whether there is infringement.

The factors to be considered are as follows:

1) whether there is intent on the part of the alleged infringer to "palm off" his products as those of another; 2) the similarity of the trademarks in appearance and suggestion; 3) the strength of the plaintiff's mark; 4) the area and manner of concurrent use; and 5) the degree of care likely to be exercised by purchasers. Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538, 543 (2d Cir. 1956). Other factors to be considered in reaching, as stated above, this determination are the names in conjunction with the similarity of the presentation of the products with

Ed.2d 81 (1966) (*Barbecue Beans* and *Beanee Barbecue*);
General Aerosols, Inc. v. American Home Products Corp., 318 F.2d 769, 50 CCPA 1373 (1963) (*Aerowax, Aeromist, Aero Shave, Aero Snow* and *Aeromagic*);
E. L. Bruce Co. v. American Termicide Co., 285 F.2d 462 (C.C.P.A.1960) (*Terminix* and *Termicide*);
Goldring, Inc. v. Town-Moor, Inc., 228 F.2d 254, 43 CCPA 740 (1955) (*Town Moor* and *Townley*);
CASES WHERE INFRINGEMENT FOUND:
Spice Islands Co. v. Spice Land Products, Inc., 262 F.2d 356 (2d Cir. 1959) (*Spice Land* and *Spice Islands*);
Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774 (7th Cir. 1927) (*Cuticlean* and *Cutex*);
Gehl v. Hebe Co., 276 F. 271 (7th Cir. 1921) (*Meje* and *Hebe*);
Nu-Enamel Corp. of Illinois v. Armstrong Paint & Varnish Works, 95 F.2d 448 (7th Cir. 1938) aff'd, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938) (*Nu-Enamel* and *Nu-Beauty Enamel*);
La Touraine Coffee Co. v. Lorraine Coffee Co., 157 F.2d 115 (2d Cir. 1946), cert. denied, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946) (*La Touraine* and *Lorraine*);
Industrial Rayon Corp. v. Dutchess Underwear Corp., 92 F.2d 33 (2d Cir. 1937), cert. denied, 303 U.S. 640, 58 S. Ct. 610, 82 L.Ed. 1100 (1938) (*Spun-Lo* and *Sunglo*);
George W. Luft Co. v. Zande Cosmetic Co., Inc., 142 F.2d 536 (2d Cir. 1944), cert. denied, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606 (1944) (*Tangee* and *Zande*);
Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144 (3rd Cir. 1953), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953) (*Q-Tips* and *Johnson's Cotton Tips*);
Rex Shoe Co. Inc. v. Juvenile Shoe Corp. of America, 273 F.2d 179 (C.C.P.A.1959) (*Footthrills* and *Thrill-mates*);

Friedman v. Sealy, Inc., 274 F.2d 255 (10th Cir. 1959) (*Posturepedic* and *Golden Sleep* and *Proper-Pedic* and *The Golden Fleece*);
In re Beaunit Mills, Inc., 274 F.2d 436 (C.C.P.A.1959) (*Cultured Cotton* and *Cultured Bemberg*);
S. E. Mighton Co. v. La Pryor Milling Co., 274 F.2d 676 (C.C.P.A.1960) (*Doggle Dinner* and *Dog-E-Dite*);
Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956) (*Maternally Yours* and *Your Maternity Shop*);
Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602 (2d Cir. 1952) cert. denied, 345 U.S. 909, 73 S.Ct. 650, 97 L. Ed. 1345 (1953) (*Gro Pals* and *Gro Shoe & Gro-Sock*);
Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960) (*Brylcreem* and *Valcream*);
G. D. Searle & Co. v. Chas. Pfizer & Co., Inc., 265 F.2d 385 (7th Cir. 1959) cert. denied, 361 U.S. 819, 80 S.Ct. 64, 4 L.Ed. 2d 65 (1959) (*Dramamine* and *Bonamine*);
Western Oil Refining Co. v. Jones, 27 F.2d 205 (6th Cir. 1928) (*Silver Flash* and *Super-Flash*);
Florence Mfg. Co. v. J. C. Dowd & Co., 178 F. 73 (2d Cir. 1910) (*Stakleen* and *Keepclean*);
Rockwood Chocolate Co. v. Hoffman Candy Co., 372 F.2d 552 (C.C.P.A.1967) (*Rockwood Bag-O-Gold* and *Cup-O-Gold*);
Applied Research & Dev. Corp. v. Lily-Tulip Cup Corp., 371 F.2d 895 (C.C.P.A. 1967) (*China-Foam* and *China-Cote*);
Gesellschaft v. Murray, Sons & Co., 370 F.2d 583 (C.C.P.A.1967) (*Peer Export* and *Peerage*);
American Cyanamid Co. v. Humble Oil & Refining Co., 370 F.2d 598 (C.C.P.A. 1966) (*Vatsol* and *Varsol*);
Metropolitan Life Ins. Co. v. Metropolitan Ins. Premium Finance Corp., 264 F. Supp. 507 (S.D.Fla.1966) (*Metropolitan Ins. Premium Finance Corp.* and *Metropolitan Life Ins. Co.*).

respect to their design and general appearance, price, and other nonfunctional aspects, Harold F. Ritchie, supra, 281 F.2d at 760, and the nature of the words or syllables used, J. R. Wood, supra, 278 F.2d at 159.

In the instant matter, the area and manner of concurrent use is clear. Both plaintiff and The Aerfab Corp. sell within the United States, generally, a synthetic, laminated fabric which gives the appearance of leather. Both plaintiff and defendants sell their products to the garment industry which manufactures clothes from the fabric. Though they chiefly compete for sales to the garment trade through advertising in trade organs, both plaintiff and defendants have attempted by general advertising to create a retail customer acceptance and demand for their particular fabric.

■ Plaintiff's trademark AERPEL is registered by the United States Patent Office. This registration is sufficient to establish, prima facie, its prior use of the mark on the goods, and in the absence of contradictory evidence, no further proof of the matter by plaintiff is necessary. May Department Stores Co. v. Kenya Corp., 234 F.2d 870, 43 CCPA 940 (1956). The Aerfab Corp. mark for which a trademark registration application is pending is AERFAB. In appearance and suggestion, are AERPEL and AERFAB confusingly similar?

Plaintiff claims that its mark was chosen because the phrase "AER" had the meaning of the word "air" in many European countries, and the phrase "PEL" is derived from the Italian word for "leather". Therefore, plaintiff says, use of AERPEL was descriptive to Europeans, but has no meaning in English and is clearly a foreign language.

Defendant claims that its name AERFAB is a coined English work combining the word "AER" and the word "fabricate". The prefix "AER", this defendant says, was chosen because of the nature of the fabric produced which is permeable to air. "FAB" was chosen because it is the combining form or abbreviation for the word "fabricated".

The term "AER" is defined in Webster's Third New International Dictionary (G. & C. Merriam Co. 1961), 33, as follows:

"aer-or aero-*comb*(ining) form (ME *aero*-, fr. MF, fr. L, fr. Gk *aer*-, *aero*-, fr. *aer*-, *aer*-more at AIR)

1a: air: atmosphere: aerial (*aer*ate) (*aer*enchyma) (*aer*obic) b: aerial and (*aer*ohydrous)

2: Gas (*aer*ormetry) (*aer*osol)

3: aviation (*aer*odrome) (*aer*otechnical)."

See generally, General Aerosols, Inc. v. American Home Products Corp., 318 F.2d 769, 770, 50 CCPA 1373 (1963) where trademarks with the prefix "aero" were considered.

■ It is well settled that marks cannot be dissected for purposes of comparison but must be considered in their entirety. May Department Stores, supra; Ye Olde Tavern Cheese Prod. Inc. v. Planters Peanuts Div., Standard Brands, Inc., 261 F.Supp. 200, 205 (N.D.Ill.1966). Nevertheless, "Trademarks containing a word in the public domain are said to be less 'confusingly similar if they resemble each other only by the inclusion of a word which is in the public domain.'" J. R. Wood, supra, 278 F.2d at 159. Additionally, "it is proper to note that * * * marks whose initial syllable or syllables are the same will not be regarded as confusingly similar if the syllable or syllables in question have a descriptive or suggestive connotation and the remaining portions of the marks are clearly

distinct." May Department Stores, supra, 234 F.2d at 872; See generally General Aerosols, Inc., supra. It is also to be noted, however, that courts often have found dissimilar prefixes when combined with generic or descriptive suffixes to be infringing. Harold F. Ritchie, supra; Q-Tips, Inc. v. Johnson & Johnson, 206 F.2d 144 (3rd Cir. 1953), cert. denied, 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953); Western Oil Refining v. Jones, 27 F.2d 205 (6th Cir. 1928). Here "AER", the word or syllable that is alleged to be the basis of the infringement may either be called a word in the public domain or a syllable having a descriptive or suggestive connotation.

■ In judging trademark infringement, similarity in sound is to be considered, but "[o]cular comparison of the tout ensemble is the best means of determining the fact of deception and infringing imitation. 87 C.J.S. Trade-Marks, Trade Names, And Unfair Competition, § 68, p. 290". Robinson Co. v. Plastics Research & Dev. Corp., 264 F.Supp. 852, 861 (W.D.Ark.1967). Plaintiff argues that defendants are infringing its mark by using "AER", a salient part of its mark, despite the fact that the second syllables are in no way similar. Although "[i]t is possible to infringe a trademark by adopting and using only a 'salient part' of it", Ye Olde Tavern, supra, 261 F.Supp. at 205, plaintiff has offered no evidence to demonstrate that customers actually refer to its product by emphasis of the "AER", or otherwise, to prove that "AER" is the salient part of its mark. In fact, it is obvious that since there are many trademarks beginning with "AER" or "AERO", General Aerosols, Inc., supra, in this case the "PEL" is the salient, distinguishing syllable in the trademark.

In addition to the above considerations which militate against a finding of infringement and lead to the conclusion that plaintiff's mark is a weak one, not entitled to protection in the instant matter, the court has considered the factors of whether there is an intent to "palm off" on the part of the alleged infringer, the degree of care likely to be exercised by purchasers, and the names with the similarity of the presentation of the products with respect to other non-functional aspects.

The purchasers here involved are, by and large, firms in the garment industry. These primary purchasers are likely to be careful in their purchasing because they are the manufacturers of the clothes into which the fabrics are made. Plaintiff has made only slight showing of an intent to "palm off" on the part of the alleged infringer. And, of course, in this highly competitive industry, the courts must be careful to consider the distinction between "a deliberate attempt to deceive and a deliberate attempt to compete." Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569, 572 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). The other circumstances involved here do not lead to the conclusion that there has been infringement. And though it is not necessary that there be any evidence of actual deception or confusion, La Touraine, supra, "the absence of such evidence is relevant to the question of similarity." Coca-Cola Co. v. Carlisle Bottling Works, 43 F.2d 101, 109 (E.D.Ky.1929), aff'd., 43 F.2d 119 (6th Cir. 1930). Plaintiff, here, has presented no evidence of actual deception or confusion.

■ Upon consideration of the meager evidence contained in the brief affidavits which must be considered in reaching a determination that there is trademark infringement and/or unfair competition, this court finds that plaintiff has not made a sufficient showing of likelihood of success on the merits on these issues to warrant the grant of a preliminary injunction.

On applications for preliminary injunctions the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact. Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d

141, 143 (9th Cir. 1964). Plaintiff cannot succeed in meeting its burden of proof by mere assertions of irreparable injury without a showing of prima facie supporting evidentiary facts. Nadya, Inc. v. Majestic Metal Specialties, Inc., 127 F.Supp. 467 (S.D.N.Y.1954); Hudson Pulp & Paper, supra; Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267–268 (E.D.La.1967). Plaintiff has made no factual statement of loss of sales or of circumstances of sales lost, other than making the conclusory allegation that sales have declined greatly since the appearance of AERFAB. Moreover, it is not evident that the decrease in sales was due to the appearance of the defendants' product rather than to plaintiff's decreased advertising expenditures. Plaintiff also alleges injury in the damage to the name AERPEL, but no evidence of this is offered. It is not claimed to be irreparable. It is also to be noted that the names AERPEL and AERFAB have been utilized by the parties on the competing products for more than two years before this action was brought. Plaintiff clearly has not shown the necessity for relief pendente lite. Plaintiff, having elected to proceed on this motion with affidavits only, must now await a full trial on the issues of fact discussed above before the court can determine plaintiff's entitlement, if any, to the relief sought.[2] The motion is denied.

2. Upon applications for preliminary injunctions where plaintiff relies on affidavits and where there are apt to be opposing affidavits raising issues of fact, plaintiffs are perhaps foregoing an opportunity to prevail which is provided for by Rule 65(a) (2) Fed.R.Civ.P. in not presenting live testimony. That Rule clearly indicates that an applicant for preliminary injunction is entitled to a hearing in the nature of a trial. "Hearing requires a trial of an issue of fact. Trial of an issue of fact necessitates an opportunity to present evidence. Sims v. Greene, 3 Cir., 161 F.2d 87." Hawkins v. Board of Control, 253 F.2d 752 (5th Cir. 1958). Moreover, Rule 52(a) provides: "In all actions tried upon the facts without a jury * * *, the court shall find the facts specially * * *."

Here the court has been unable to decide the disputed facts because it has been deprived of the benefit of live testimony, cross-examination, and an opportunity to observe the demeanor of witnesses. "Finding facts requires the exercise by an impartial tribunal of its function of weighing and appraising evidence offered, not by one party to the controversy alone, but by both." Sims v. Greene, 161 F.2d 87 (3rd Cir. 1947). Finally, Rule 65(a) (2) provides that, "Before or after commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." It seems that cases of this kind should be handled as contemplated by Rules 65 and 52.