Carmelo **TOMASELLO** (A18 095 880),
Plaintiff,

v.

The Hon. **William P. ROGERS,** as Secretary of State of the United States of America, his agents, servants and/or employees; and the Hon. **Raymond F. Farrell,** as Commissioner of the U. S. Immigration and Naturalization Service, his agents, servants and/or employees, Defendants.

No. 69 Civ. 4505.

United States District Court
S. D. New York.

Dec. 5, 1969.

Stuart Wadler, New York City, for plaintiff, Stuart Wadler, New York City and Anthony E. Anzalone, of counsel.

Robert M. Morgenthau, U.S.Atty., SDNY, for defendants.

## OPINION

EDELSTEIN, District Judge.

This is an action which challenges the administration of the system of alloca-tion of immigrant visas provided for in section 203 of the Immigration and Nationality Act [Act], 8 U.S.C. § 1153 (1964), as amended (Supp. IV, 1969).[1] The plaintiff is an alien who is a native and citizen of Italy and the defendants Rogers and Farrell are respectively the Secretary of State and the Commissioner of the United States Immigration and Naturalization Service [Service]. This matter is before the court on a motion for a preliminary injunction.

The plaintiff entered this country at New York City on September 10, 1968, as a transit without visa,[2] and as such was authorized to remain within this country for two days. Instead of departing on September 12, 1968, the plaintiff absconded and sought employment. He was located by immigration officers on September 27, 1968, and on that date the Service issued an order requiring the plaintiff to show cause why he should not be deported for overstaying his authorized time in the United States. A deportation hearing was held on October 3, 1968, and, at that time, the plaintiff, represented by counsel, conceded deportability and waived his right to appeal. The Special Inquiry Officer thereupon found the plaintiff to be deportable and a warrant of deportation was then issued.

Nonetheless, the plaintiff continued to remain in the United States due to the introduction of a private bill into the Senate, S.4110, in behalf of the plaintiff and seven other aliens. This bill provided for the lawful admission of the plaintiff into the United States for permanent residence. The Service stayed plaintiff's deportation pending consideration of the bill. However, this bill subsequently received adverse treatment and the plaintiff was then directed to

1. Jurisdiction over this matter is based upon section 279 of the Act, 8 U.S.C. § 1329 (1964). The defendants have waived any possible exceptions that they may have to the venue of this action.

2. Section 101(a) (15) (C) of the Act, 8 U.S.C. § 1101(a) (15) (C) (1964) pro-vides that "The term 'immigrant' means every alien except an alien who is within one of the following classes of non-immigrant aliens—

\* \* \* \* \*

(C) an alien in immediate and continuous transit through the United States, \* \*."

surrender on October 16, 1969, for immediate deportation.

Plaintiff commenced the instant action on October 14, 1969, and simultaneously moved for a preliminary injunction staying his deportation until the outcome of this suit. It is this motion for preliminary relief which is now before the court[3] and pending its disposition the plaintiff remains at large by agreement between the parties. The issues are as follows:

The Immigration and Nationality Act was amended in 1965, Pub.L. No. 89–236, 79 Stat. 911, so as to repeal the national origin quota system and substitute in its place a worldwide immigration allocation for areas outside the Western Hemisphere of 170,000 immigrant visas annually. Under the new system the visas are to be distributed on a first-come first-served basis without regard to place of birth, except that no more than 20,000 visas can be granted to nationals of any one foreign state in any one year.[4] Section 203 of the Act, 8 U.S.C. § 1153 (1964), as amended (Supp. IV, 1969), provides that this worldwide allotment of 170,000 visas is to be distributed to applicants in varying percentages on the basis of seven preferences. These seven preferences, in summary, are: (1) unmarried sons or daughters of citizens of the United States—20 percent of the 170,000; (2) spouses, unmarried sons or unmarried daughters of aliens lawfully admitted for permanent residence—20 percent of the 170,000 plus any unused portion of the first preference; (3) members of the professions or immigrants with exceptional ability in the sciences or arts who will benefit the national economy—

10 percent of the 170,000; (4) married sons or married daughters of citizens of the United States—10 percent of the 170,000 plus the unused portions of the first three preferences; (5) brothers or sisters of citizens of the United States —24 percent of the 170,000 plus the unused portions of the first four preferences; (6) "* * * qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States," —10 percent of the 170,000; and, (7) refugees—six percent of the 170,000. The priority of applicants in each of the first six preferences is determined by the date on which their petitions for preference status are filed with the Attorney General. Any visa numbers that remain unused in a single year by applicants with preference status are allotted to qualified nonpreference immigrants in the chronological order in which they qualify.

After entering the United States, the plaintiff, on June 5, 1969, became the beneficiary of an approved petition for a preference under the sixth enumerated category. However, a visa number was then not available to plaintiff because, under the interpretation of the Act made by the Secretary of State, the Service permitted all of the maximum of 20,000 visas available to Italian nationals in any one year to be exhausted by those applicants who qualified for one of the first five preferences described above. The plaintiff alleges as his first cause of action that administration of the Act in this manner, which effectively denies to him the possibility of ob-

---

3. The motion for a preliminary injunction was brought on by an order to show cause and a hearing was held thereon. Although he is not specifically named as a party to the action, the motion is particularly directed against P. A. Esperdy, the District Director for the New York District of the Service, who is the official alleged to have final authority to issue an order deporting the plaintiff and to stay the execution thereof.

4. Immediate relatives of United States citizens, children, spouses, and parents of persons over twenty-one years of age, are not subject to these numerical limitations. Section 201 of the Act, 8 U.S.C. § 1151 (1964), as amended (Supp. IV, 1969).

taining a visa, is contrary to the meaning and purpose of the 1965 amendment and is therefore invalid. In addition, as a second cause of action, the plaintiff alleges that the defendants have wilfully colluded in this improper administrative policy in order to deny to aliens of Italian ancestry the rights and privileges allegedly accorded to them and that the defendants have "acted in such manner as to hamper and harass and discriminate against aliens of Italian origin in obtaining permanent residence in the United States." The plaintiff demands that defendant Rogers be directed to allocate visas in accordance with the plaintiff's view of the proper interpretation of the statute and to publish the allegedly proper quota availability for the sixth priority Italian quota. The plaintiff also demands that defendant Farrell be directed to order his agents to accept and process an application by plaintiff for a change of status pursuant to section 245 of the Act, 8 U.S.C. § 1255 (1964), *as amended* (Supp. IV, 1969.)[5]

 A preliminary injunction, of course, is an extraordinary equitable remedy the application for which is addressed to the sound discretion of the court. In order to establish his right to a preliminary injunction a party must demonstrate, among other things, that he will probably succeed in the trial and that, therefore, he will be entitled to the ultimate relief which he seeks. *E. g.*, American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903, 904 (2d Cir.1968); Imperial Chemical Industries Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 461, 19 A.L.R.3d 492 (2d Cir.1965); I.T.S. Industria Tessuti Speciali v. Aerfab Corp., 280 F. Supp. 581, 585 (S.D.N.Y.1967). The plaintiff, however, has not made this showing and his application for preliminary injunctive relief accordingly must be denied.

If he is to succeed on his first cause of action the plaintiff will have to demonstrate that the defendant Rogers' allocation of the 170,000 visas alloted on an annual basis to immigrants from outside the Western Hemisphere is based on an erroneous interpretation of the Act. Under the present system visa numbers are made available in the order of the preference classes and, within such classes, in the order of the filing dates of the petitions according preference status. Where the demand of natives of a particular foreign state for visa numbers exceeds the 20,000 per annum limitation, visa numbers are not made available to applicants in the lower preference classes until the demand of applicants holding higher preference status is satisfied. Thus, for example, if there are 30,000 Italians with chronological priority and preference status who want to emigrate in a single year to the United States, only 20,000 are allowed to enter and these 20,000 will be selected according to which class of preference they are in and their priority in that class. In fact there are more than 20,-000 Italian applicants with chronological priority and preference status at the present time, and it is for this reason that a visa number is not presently available to the plaintiff who has only sixth preference status.

Plaintiff contends that a correct interpretation of the Act requires that the percentages applicable to each class of

---

5. Subsection (a) of this section provides that "The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

Subsection (c) provides that "The provisions of this section shall not be applicable to any alien who is a native of any country of the Western Hemisphere or of any adjacent island named in section 1101 (b) (5) of this title."

preference be applied pro rata to the 20,000 per annum national limitation, as well as to the 170,000 per annum overall limitation. In support of this theory the plaintiff argues that the 1965 amendment is ambiguous as to whether or not the percentages applicable to each class of preference should also be applied to the 20,000 national limitation. The plaintiff, therefore, looks to the purpose of the 1965 amendment and claims that aside from abolishing the national origin system, that purpose was to maintain a broad balance among those persons emigrating to this country between those with family ties to persons in the United States and those with skills which can be of benefit to the nation. Accordingly, the argument continues, to effectuate this balance the Act should not be construed so as to create priorities between preferences, as the present administration of the Act does, but only to maintain priorities within each class of preference. Thus, according to plaintiff, by way of illustration, if 20,000 Italians are permitted to enter this country each year, then ten percent of them (the percentage applicable to the sixth preference) should be those like the plaintiff who hold sixth preference status.

 Even a cursory examination of the plaintiff's arguments reveal their insubstantiality. The court finds that the statute is not ambiguous. The meaning and purpose of the Act, as indicated by its language and legislative history, militate strongly against the plaintiff's view.

First, it is clear that the Act in fact does create an order of preferences and not merely a sequential listing. Section 203(b) of the Act, 8 U.S.C. § 1153(b) (1964), *as amended* (Supp. IV, 1969), specifically provides that

In considering applications for immigrant visas under subsection (a) of this section consideration shall be given to applicants *in the order in which the classes of which they are members are listed in subsection (a) of this section.* (emphasis added)

The legislative history as well makes this point clear. For example, both the Senate and House committee reports in their section-by-section analysis of the new provisions state that the amended Act establishes "* * * the order of preference priorities and percentage allocations for the admission of qualified immigrants under the numerical limitation of 170,000 * * *." S.Rep.No. 748, 89th Cong., 1st Sess. 22; H.R.Rep. No. 745, 89th Cong., 1st Sess. 19, U.S. Code Cong. & Admin.News 1965, p. 3340.[6] Further, while it is true as plaintiff argues that immigrants qualifying for one of the seven preferences can be divided into two broad classes, those with family ties to persons in the United States and those with skills which can benefit the country, it is indicated over and over again in the legislative record, that the foremost purpose of Congress was to ensure the reunification of families and that acquisition of immigrants with needed skills was only a secondary motivation. *See, e.g.,* 111 Cong. Rec. 21,585 (1965) (remarks of Representative Feighan, Chairman of the Subcommittee on Immigration and Nationality of the House Committee on the Judiciary). In this regard it is significant that first, immediate relatives of United States citizens—children, spouses, and parents of persons over twenty-one years of age—are not subject to the numerical limitations of section 203, and that, second, a total of 74 percent of the visas awarded according to preference status are given to those classes which are predicated on family relationships.

Second, and more importantly, plaintiff's interpretation flies in the face of the conceded objective of the Act to allo-

6. *Accord,* H.R. Comm. on the Judiciary, 89th Cong., 1st Sess., Summary of Public Law 89–236, Amendments to the Immigration and Nationality Act, 3 (Comm. Print 1965) where it is stated that "The order in which immigrants will receive visas under the numerical ceiling of 170,-000 will depend upon the preference category for which they are eligible."

cate visas without regard to nationality except for the 20,000 per annum limitation imposed upon immigrants entering the country from a single foreign state. Plaintiff's theory that the percentages of the total numerical limitation which apply to each preference class are also to apply on a pro rata basis to the number of Italians who are allowed to enter this country each year, if accepted, would effectively mean that in each preference class there would be an Italian quota as well as a quota for every other national group to which visas are given. This is so because, for example, ten percent of the Italians entering this country each year as immigrants would be required to have sixth preference status, and, thus, along with chronological priorities, nationality would once again have to be a factor in the distribution of preferences. The national origin system, albeit in slightly different form, would thus be resurrected. Plaintiff abjures this result, but he cannot escape it. That Congress did not intend the Act to be interpreted in the manner suggested by plaintiff is evidenced by the following colloquy between Representative Nedzi and Chairman Feighan which occurred during the debate in the House:

MR. NEDZI. I have a brief question. Do the percentages apply to each country, or do they apply to the entire quota?

MR. FEIGHAN. The percentages apply to the total. The 170,000 limit external to the United States applies to all countries external to the United States.

MR. NEDZI. I understand, but so far as each individual country is concerned, for example, could more than 20 percent of the country's immigration be in a particular category?

MR. FEIGHAN. * * * any percentage up to 100 percent could be allocated to a single category for nationals of any country.

MR. NEDZI. Then the percentages apply worldwide and not so far as a particular country is concerned?

MR. FEIGHAN. There is no percentage to a particular country. The only limitation on a country is that it will not exceed 20,000, exclusive of spouses, children, and parents of U.S. citizens. 111 Cong.Rec. 21,589 (1965).

As to his second cause of action, involving charges of collusion between the defendants in a policy and actions intended to harass and discriminate against aliens of Italian origin, the plaintiff has failed to present any evidence or give this court any indication whatsoever as to how, if at all, he will be able to support his allegations. Here too, therefore, the plaintiff has failed to demonstrate that he will probably prevail in the end.

■ Finally, there is a third reason why plaintiff's motion for a preliminary injunction must be denied. As indicated *supra,* one of the items which plaintiff seeks by way of ultimate relief is an order directing the defendant Farrell in turn to direct his employees to accept and process an application by plaintiff pursuant to section 245 of the Act[7] for an adjustment of his immigration status from a transit without visa to that of an alien lawfully admitted for permanent residence. It appears, however, that even if plaintiff were to prevail in this action, nevertheless, he still would not be entitled to this item of relief because, as a transit without visa, he is precluded from adjusting his status while in the United States by 8 C.F.R. § 214.2(c)(1) (1969). That regulation provides in part that:

"The privilege of transit without a visa may be authorized only under the conditions that the alien will depart voluntarily from the United States, that *he will not apply for adjustment of status under section 245 of the Act.* * * *" (emphasis added)

7. See footnote 5, *supra.*

This regulation notwithstanding, plaintiff argues that he is not barred from applying for adjustment of his status while in the United States, because section 245 does not preclude him from making such an application, and because the Attorney General has not ruled that aliens having transit without visa status will not be accorded discretionary relief under section 245. Plaintiff gratuitously characterizes 8 C.F.R. 214.2(c) (1) as being nothing more than the Attorney General's instruction to immigration officers not to admit aliens as transits without visas unless they agree not to apply for section 245 relief. Drawing upon this characterization the plaintiff theorizes that he cannot be held to have waived any of his rights since one cannot be held to have agreed to that of which one has no knowledge.[8] The plaintiff rationalizes, therefore, that while the immigration officers may have violated their instructions by admitting plaintiff without obtaining a waiver, there is nothing in either the statute or the regulation which prevents him from applying for adjustment of his status in these circumstances.

█ Plaintiff's argument is without foundation. 8 C.F.R. 214.2(c) (1) cannot be brushed aside merely as being an instruction addressed solely to immigration officers. Transit without visa status is a privilege which exists in order to facilitate international travel through the United States chiefly by relieving aliens of the usual documentary requirements for entrance into this country. See, section 212(a) (26) and (d) (4) of the Act, 8 U.S.C. § 1182(a) (26) and (d) (4) (1964);[9] 1 Gordon & Rosenfield, Immigration Law and Procedure, § 2.9a, at 2-49 (1967). This privilege obviously presents opportunity for abuse. The Attorney General, therefore, in his discretion, pursuant to specific statutory authority to regulate the admission of aliens as nonimmigrants, section 214(a) of the Act, 8 U.S.C. § 1184 (1964), has conditioned the grant of this privilege so that aliens accorded transit without visa status are precluded from applying for adjustment of their status. Having accepted the benefits of transit without visa status, the plaintiff is now bound by the applicable conditions. The court has been unable to find any authority for the express waiver requirement proposed by the plaintiff. *Cf.*, United States v. Kenny, 247 F.2d 139 (2d Cir. 1957).[10] Thus plaintiff will have to leave the country in any event in order to adjust his status. A stay of deportation is not warranted. *Cf.*, Siu Fung Luk v. Rosenberg, 409 F.2d 555 (9th Cir.1969), petition for cert. dismissed 396 U.S. 801, 89 S.Ct. 2151, 24 L.Ed.2d 58 (1969); Wan Ching Shek v. Esperdy, 304 F.Supp. 1086 (S.D.N.Y.1969).

8. The government does not contend that plaintiff was ever advised by any immigration officer that acceptance of transit without visa status would preclude him from applying for adjustment of his status.

9. 8 U.S.C. § 1182(a) (26) provides that "Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * * (26) Any nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid nonimmigrant visa or border passing identification card." 8 U.S.C. § 1182(d) (4) provides that "Either or both of the requirements of paragraph (26) of subsection (a) of this section may be waived by the Attorney General and the Secretary of State acting jointly * * * (C) in the case of aliens proceeding in immediate and continuous transit through the United States * * *."

10. "We know of no principle of law whereby an applicant for naturalization is immune from statutory provisions imposing conditions on eligibility for naturalization merely because the statute has not been called directly to his attention." 247 F. 2d at 143.

Plaintiff's motion for a preliminary injunction is utterly without substance. The motion is denied in all respects.

The foregoing constitutes the required findings of fact and conclusions of law.

So ordered.