BROWNING DEBENTURE HOLDERS'
COMMITTEE et al., Plaintiffs,

v.

DASA CORP et al., Defendants.

No. 72 Civ. 1332.

United States District Court,
S. D. New York.

May 8, 1972.

Maull & Soeiro, Bradley R. Brewer, New York City, for plaintiffs.

Jacobs, Persinger & Parker, Richard B. Persinger, New York City, for defendant DASA Corp.

Sullivan & Cromwell, by Edward W. Keane, New York City, for defendant Bank of N. Y.

MOTLEY, District Judge.

*Memorandum Opinion and Order*

Plaintiffs, owners of less than two percent of the outstanding debentures of defendant DASA Corporation (DASA),

seek to preliminarily enjoin DASA from 1) selling part of its computer systems and leases, and 2) amending the indenture between DASA and the Bank of New York so as (a) to allow that sale and (b) to reduce the conversion price of the debentures from $42.42 to $21.00. The court finds that plaintiffs have shown none of the prerequisites for a preliminary injunction and therefore denies the motion.

A number of months ago DASA Corporation, facing financial difficulties, decided to sell a portion of its assets, consisting of computer equipment and leases. Datatron Corporation agreed to purchase these assets for $2,350,000.00 subject to amendment of the indenture agreement to permit the sale. This amendment requires the consent of holders of 66⅔ percent of the outstanding principal amount of the debentures. To obtain that consent DASA sent a 67-page solicitation letter, dated March 9, 1972, to its debenture holders, after first filing the letter with the Securities and Exchange Commission.

Plaintiffs became aware of this solicitation by March 17, 1972 and communicated to the trustee (Bank of New York) their intention of distributing their own written comments in opposition to the proposed indenture amendments. The trustee agreed to mail them to debenture holders as soon as plaintiffs supplied the material and the costs of mailing. It appears that plaintiffs have not yet done so.

They did, however, file a complaint in this action on March 30, 1972, charging defendants with violations of § 14(a) of the Exchange Act of 1934, 15 U.S.C. § 78n(a); SEC Rules 14a–9 and 14a–3(a), 17 C.F.R. 240; and § 323 of the Trust Indenture Act of 1939, 15 U.S.C. § 77www(a), in connection with the consent solicitation letter of March 9. The complaint also alleges § 14(a) violations in DASA's 1972 proxy solicitation materials, and its 1970 and 1971 annual reports, and charges the trustee with breach of its common law and statutory fiduciary duties.

Plaintiffs moved for the preliminary relief described above on April 11, 1972, apparently on the ground that the consent solicitation letter contained false or misleading statements or omissions of material facts. In response to the initiation of this suit and the motion for preliminary injunction, DASA prepared another letter to the debenture holders, also filed with the SEC. This letter, dated April 21, 1972 and mailed April 24, 1972, described the pending action, informed the debenture holders that they could withdraw their previously filed consents to the amendments of the indenture, and again urged management's desire that they consent.

By letter dated April 28, 1972 counsel for the trustee, Bank of New York, informed the court that consents had been received from the holders of more than 66⅔ percent of the outstanding principal amount of the debentures. By May 2, 1972 the trustee had received consents from holders of 71.3 percent of the outstanding principal amount of the debentures, and withdrawals of consent from .3 percent leaving in effect consents from 71 percent. DASA's counsel affirms in an affidavit dated May 3, 1972 that the SEC staff has no objection to DASA's proceeding with the trust indenture amendments if it holds the requisite amount of consents at the time of amendment.

■■ A preliminary injunction will be granted only upon a clear showing of probable success and possible irreparable injury. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969). Furthermore the possible injury to the plaintiffs must outweigh the harm the defendants would suffer as a result of the injunction. I. T. S. Industria Tessuti Speciali v. Aerfab Corp., 280 F.Supp. 581, 585 (S.D.N.Y.). Plaintiffs here fail on all three of these grounds.

■ To establish a strong probability of success on the merits, plaintiffs must show that the communications at issue —particularly the consent solicitation

letter of March 9, 1972 which bears most heavily on the decisions affecting the acts plaintiffs seek to enjoin—contain *material* misstatements or omissions. For a statement to be material under § 14(a) it must be of such a character that it might have been considered important by a reasonable debenture holder who was deciding how to vote. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970).[1]

An examination of the voluminous list of facts allegedly omitted from the consent letter shows that many are more supposition and conclusion than fact, and that others are irrelevant, and hence immaterial, to the choice before the debenture holders.[2] Other of plaintiffs' allegations of misstatement amount to little more than alternative means of presenting the information. Whatever their merit, plaintiffs' contentions were made known to debenture holders by DASA's April 21 letter.

■ There are infinite ways in which to select and arrange facts and conclusions, and a court in enforcing § 14(a) of the Exchange Act cannot act as a supervisory copy editor, rearranging and shifting emphasis to meet its, or plaintiffs', ideal of objective reporting. Rather, ". . . it is enough if proxy material sets forth all the facts necessary to enable a reasonably intelligent stockholder to make his own informed decision." Abraham v. Nytronics, Inc., 312 F.Supp. 519, 524 (S.D.N.Y.1970) (Mansfield, D. J.). By this standard, plaintiffs' success at trial is far from assured.

■ Secondly, there is no clear showing that plaintiffs will suffer irrepara-

ble harm in the absence of an injunction. DASA intends to use the proceeds of the computer sale to retire $2,000,000 of indebtedness senior to the debentures. Plaintiffs claim that if the sale takes place their debentures will then be secured by a lesser amount of corporate assets. But if the sale is enjoined, thus possibly forcing DASA into liquidation or reorganization, this senior debt will first be satisfied out of those very assets before they are applied to any debenture debt. Thus, the debenture holders seem unlikely to be worse off in the absence of a restraint of the sale.

Nor will the plaintiffs suffer irreparable harm if the conversion price of the debentures is amended from $42.42 to $21.00. Plaintiffs contend that even the $21.00 figure is too high. In fact, we suspect that much of the motivation for this suit is plaintiffs' desire to bargain defendants to a lower conversion price. In any case, a present amendment of the conversion price to $21.00 can do little irreparable damage to plaintiffs, who are not compelled to convert their debentures at that price and who are free to seek corporate action for a further reduction in the conversion price.

Finally, the harm to defendants of a preliminary injunction would outweigh any possible benefits to plaintiffs. Now that the requisite consents are in, DASA is free to amend the indenture and consummate the sale to Datatron. Both DASA and the holders of the majority of the debenture principal believe DASA will be harmed if the indenture amendments and sale do not proceed. All parties acknowledge DASA's precarious financial structure; an injunction might do irreparable damage to DASA's ability

---

1. "Where the misstatement or omission in a proxy statement has been shown to be 'material,' . . . that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. This requirement that the defect have a significant *pro-* *pensity* to affect the voting process is found in the express terms of Rule 14a–9. . . ." *Id.* (emphasis in original) (citations omitted).

2. On the difficulties of identifying "facts" and "materiality" see, Kripke, Rule 10b–5 Liability and Material "Facts", 46 N.Y.U.L.Rev. 1061 (1971).

to continue operating. The balance of equities is therefore on the side of defendants.

For these reasons the motion is denied.

So ordered.