## ANDREW JERGENS CO. v. BONDED PRODUCTS CORPORATION.

Circuit Court of Appeals, Second Circuit. August 23, 1927.

No. 263.

1. **Trade-marks and trade-names and unfair competition ⬅96—Difference in issues and evidence in unfair competition suits leaves no place for doctrine of res judicata.**

The issues and evidence in suits for unfair competition being different, the doctrine of res judicata can find no place.

2. **Equity ⬅65(2)—Things done by plaintiff without right held not so closely related to issue in suit as to disqualify it for relief under rule of clean hands.**

Neither plaintiff's sale of cold cream and shaving cream under the name "Woodbury," nor its issuance of a "Woodbury Book," without having acquired right to do either, was closely enough related to the issue involved in its injunction suit, unfair competition in respect to "Woodbury's Facial Soap," as to disqualify it for relief, under the rule of clean hands.

3. **Equity ⬅65(2)—Owner of soap, by changing formula for making it, held not deprived of right to equitable relief against unfair competition, under principle of clean hands.**

That plaintiff, after purchasing right to make and sell "Woodbury's Facial Soap," had changed the formula for making it, did not deprive him of right to injunctive relief, on theory of not having come into equity with clean hands; the name having come to mean an article coming from a single source, well known to the community, rather than a compound of substances according to a particular formula.

4. **Trade-marks and trade-names and unfair competition ⬅89—Under stated circumstances, manufacturer of soap for another using it in unfair competition held liable as contributory infringer.**

Though defendant merely manufactures soap for W., it is liable as a contributory infringer, if the soap as wrapped and delivered by it to W., or on his order, is likely to and does deceive the ultimate purchasers, and come into unfair competition with the soap which it knew that plaintiff was manufacturing and selling.

5. **Trade-marks and trade-names and unfair competition ⬅84—Contention that plaintiff brought about the confusion between its and defendant's soaps held not sustained by fact of plaintiff's recent advertisements, emphasizing the name "Woodbury Soap."**

Contention that plaintiff, purchaser from original maker of right to make and sell "Woodbury's Facial Soap," brought about the confusion between its soap and the Wm. A. Woodbury soaps manufactured by defendant, *held* not sustained by the fact that recent advertisements of plaintiff's soap give basis for the argument that plaintiff is emphasizing the name "Woodbury Soap," instead of "Woodbury's Facial Soap," for its product; the name "Woodbury" having been the feature of the advertisements of plaintiff's predecessor in ownership.

6. **Trade-marks and trade-names and unfair competition ⬅73(1)—Intended confusion between plaintiff's and defendant's soaps having been caused by defendant's advertising and wrappers, plaintiff, first maker, should be given injunctive relief.**

Plaintiff's Woodbury's Facial Soap being the first and best known Woodbury soap on the market, and there being a widespread confusion between it and the Wm. A. Woodbury soaps manufactured by defendant for William A. Woodbury, the public believing that the one source is the original Woodbury and his Institute, from whom plaintiff obtained the right to manufacture and sell, and this confusion having

been intentionally caused by William A. Woodbury, by subtle advertising and misleading wrappers, injunctive relief should follow; such conduct being contrary to the law of fair dealing.

**7. Trade-marks and trade-names and unfair competition ☞73(1)—Neither individual nor corporation has right by proper name to represent his or its goods as those of another.**

The principle that no one has right to represent his goods as those of another applies to misrepresentations by use of proper name, though the name be one which the individual would ordinarily be privileged to use, and this whether the individual be corporation or natural person.

**8. Trade-marks and trade-names and unfair competition ☞73(1)—In view of meaning to public of "Woodbury," applied to facial soap, defendant should be enjoined from using it as part of title of its soap made for Wm. A. Woodbury, and from using his name on wrappers as maker, except in manner to avoid confusion.**

Where to the public the name "Woodbury," as applied to soap suitable for the face, means that originally made by those from whom plaintiff obtained right to make it, and featuring the name "Woodbury" on the goods made by defendant for Wm. A. Woodbury leads to confusion, injunction against unfair competition, to be effective, should forbid use of the name "Woodbury" as part of the title or designation under which defendant's soap is to be marketed; and while Wm. A. Woodbury may say that the soap he sells is manufactured by or for him, he should do it in a way to avoid confusion, by a plain disclosure that he is not connected with the makers of "Woodbury's Facial Soap," and that his soap is not it or some new brand thereof; and his name should not appear on the top of the wrapper, but only on the sides or bottom.

**9. Trade-marks and trade-names and unfair competition ☞71—Reference on wrappers of facial soap made for Wm. A. Woodbury, to him as president of Institute formed by John H. Woodbury, from whom plaintiff got right to make Woodbury's Facial Soap, should be enjoined as causing confusion.**

The names of James H. Woodbury and his Institute having for years been associated in the public mind with the soap known as "Woodbury's Facial Soap," or "Woodbury Soap," right to manufacture which was obtained from them by plaintiff, reference on the wrappers of the soap made by defendant for Wm. A. Woodbury to said Wm. A. Woodbury as managing director and president of the celebrated Dermatological Institute founded by the late John H. Woodbury should be enjoined as necessarily causing confusion, unless there also appears a plain disclosure that plaintiff is the successor of said Woodbury and his Institute in the manufacture and sale of "Woodbury's Facial Soap."

**10. Trade-marks and trade-names and unfair competition ☞97—Injunction against unfair competition in soaps by use of name "Woodbury," should, in view of plaintiff's limited right in the name, be limited to soaps intended for facial use.**

Plaintiff having right to the name "Woodbury" only in connection with facial soap, injunction against defendant for unfair competition should be limited to its soaps intended for facial use.

**11. Trade-marks and trade-names and unfair competition ☞97—Defendant, unfair competitor, enjoined from using in advertisement or sale, any label, package, or representation calculated to pass off its soaps for plaintiff's.**

Defendant, guilty of unfair competition in soaps, should be enjoined from using, in connection with advertisement or sale of its soaps, any label, package, or representation which by imitation, color, or otherwise is calculated to cause its goods to be passed off as and for those of plaintiff.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Andrew Jergens Company against the Bonded Products Corporation for injunction. From an interlocutory decree for plaintiff (13 F.[2d] 417), the parties bring cross-appeals. Modified and affirmed.

See, also 9 F.(2d) 114; 14 F.(2d) 956; 16 F.(2d) 130.

The plaintiff, the Andrew Jergens Company, maker of "Woodbury's Facial Soap," filed its bill to enjoin trade-mark infringement and unfair competition by the defendant, a soap manufacturer in Brooklyn, alleging misuse of the name "Woodbury" upon toilet soaps and the imitation of the plaintiff's wrappers. Federal jurisdiction is based upon diversity of citizenship.

For some years prior to 1901 John H. Woodbury Dermatological Institute, of which John H. Woodbury was the head, was engaged in business in New York City, and, among other business activities, sold a soap which was labeled "John H. Woodbury's Facial Soap," and was known also as "Woodbury's Facial Soap," or "Woodbury Soap." Andrew Jergens & Co., a partnership, manufactured this soap and other toilet articles for the Institute from 1897 to 1901. By a contract dated June 13, 1901, the Jergens firm purchased for a large consideration half of the shares of stock of the Institute and the right to manufacture and deal in eight of the products theretofore sold by the Institute, including this soap. The vendors in this contract were John H. Woodbury, the John H. Woodbury Dermatological Institute, William A. Woodbury, and P. R. McCargo. They purported to sell, assign, transfer, and deliver "all their right, title, and interest in and to the commodities known as Facial Soap [and seven other articles], and all the trademarks, copyrights, and privileges of every

name and nature whatsoever appurtenant to the ownership thereof, * * * and also the privilege of using only on the articles above mentioned the neckless head trade-mark." The rights under this contract passed from the Jergens partnership, through Andrew Jergens Company, a New York corporation, to the plaintiff, a corporation of Ohio.

From 1901 to 1925 the plaintiff and its predecessors have built up a very extensive and widespread trade, their sales aggregating more than $23,000,000. They have spent in advertising more than $8,600,000. Over 80 per cent. of their business has been in "Woodbury's Facial Soap."

During this period they have engaged in considerable litigation to protect their business from what they have charged as unfair competition by John H. Woodbury and William A. Woodbury or those in privity with them. Reference to this litigation, so far as deemed material to the present suit, will be made in the opinion.

The defendant, in 1924, began to manufacture soap for William A. Woodbury, one of the parties to the above-mentioned contract of 1901. He supplied defendant with the formulæ for the soaps, the dies for stamping the cakes, and the labels to be wrapped about them. The defendant manufactured the soap, and wrapped, boxed, and distributed it, upon instructions from William A. Woodbury. After commencement of plaintiff's suit, the defendant ceased all work complained of. Complaint was made of three labels: "Woodbury's Calamined Soap," "Woodbury Skin Soap," and "Skin Soap, Woodbury Ideal." On all of the labels the full name "Wm. A. Woodbury" appears, but the word given prominence is "Woodbury." Each of the wrappers also carried statements identical with or similar to the following:

"Wm. A. Woodbury was for years managing director and president of the celebrated Dermatological Institute founded by the late John H. Woodbury."

"Based on two generations of experience, this soap is offered as the standard detergent for cleansing the skin and clearing the complexion."

Upon testimony and depositions introduced at the trial the District Court found that the public has fallen into the easy way of referring to plaintiff's product as "Woodbury soap," so that the surname "Woodbury" has acquired a secondary meaning, and that there exists, not only in local markets, but throughout the country, a real, important, and widespread confusion between the goods of the plaintiff and those put out by the defendant.

An accounting was ordered, and an injunction was granted, restraining the defendant, its officers, agents, etc., in four paragraphs as follows:

"From selling, offering for sale, putting on the market, directly or indirectly, any soap with a wrapper or other advertising on which the name 'Woodbury' appears, unless a plain disclosure also appears on said wrapper and advertising, sufficient to reasonably avoid the confusion that now exists in the market, as to the source from which said soap comes, so that the ordinary purchaser may hereafter be plainly and easily informed that said soap is not the soap manufactured and sold by plaintiff, but is one manufactured and sold by and for some Woodbury whose entire name, if used at all, shall be plainly set forth."

"From selling or offering for sale, manufacturing or wrapping soap, upon the wrappers of which, inclosing advertisement or otherwise there appears a reference to either 'John H. Woodbury' or the 'Woodbury Dermatological Institute,' or any plain or subtle reference thereto."

"From advertising, manufacturing, wrapping, selling, or offering for sale any soap upon the wrappers of which, the soap, or advertising thereof, the word 'Woodbury' appears, unless same is clearly distinguished from the soap manufactured and sold by plaintiff, so as not to induce the belief on the part of the public that defendant's soap is the well-known 'Woodbury's Facial Soap' or some new brand thereof."

"From using, in connection with the advertisement, offering for sale or sale of any soap, labels, or packages, identical with or like plaintiff's labels, Exhibit A, or defendant's label or package, Exhibits B, B–1, and B–3, to the original bill of complaint, or Exhibits B–5 or B–6 to the supplemental bill."

Both parties have appealed; the plaintiff asserting that the injunction is too narrow; the defendant that no injunction should have been granted.

Keyes Winter and John C. Pemberton, both of New York City (Walter A. De Camp, of Cincinnati, Ohio, and Edward S. Rogers and Allen M. Reed, both of Chicago, Ill., of counsel), for plaintiff.

A. P. Bachman, of New York City (Richmond J. Reese, of New York City, of counsel), for defendant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The defendant contends that

it is privileged to do whatever William. A. Woodbury may lawfully do, and that prior litigation has already adjudicated that plaintiff cannot enjoin William A. Woodbury from trading in the manner complained of. This requires a somewhat detailed examination of the prior litigation.

The first case in point of time is Jergens Co. v. Woodbury, 197 N. Y. 66, 90 N. E. 344. This was a suit brought by plaintiff's predecessor in 1907 against John H. Woodbury and the Woodbury-McGrath Company to prevent their marketing soap as "Woodbury's New Skin Soap." The opinion of the Special Term appears in 56 Misc. Rep. 404, 106 N. Y. S. 571. It refers to the contract of 1901 and finds that the Facial Soap transferred thereby was known as Woodbury's Facial Soap and Woodbury Soap, and that in advertisements of it the name of Woodbury was the feature; that the wrapper and box of the defendants' product are not identical with the wrapper and box of the plaintiff, except for the name "Woodbury," which is prominently displayed on each box and cake; and that the public is likely to be misled. The injunction restrained the sale of any soap under the name "Woodbury," or under any name which contained Woodbury as any part thereof. This injunction was affirmed by the Appellate Division without opinion. 128 App. Div. 924, 112 N. Y. S. 1121.

The Court of Appeals modified the injunction, so as to enjoin "selling or offering for sale the soap known as Woodbury's New Skin Soap, or any other soap under such a name or designation, or put up or prepared in such a manner as to be calculated to lead the public or trade to believe that in purchasing said soap they are purchasing Woodbury's Facial Soap or a new brand thereof." The opinion states that the injunction was right in restraining the defendants from making and selling "Woodbury's New Skin Soap," because the trial court found this calculated to mislead the public. But it said that the injunction went too far in forbidding the use of the name "Woodbury" on any soap, because under the contract of 1901 the plaintiff had acquired only the Facial Soap, and therefore John H. Woodbury still had the privilege of using his own name on other soaps in a manner not calculated to deceive the public into thinking them to be identical with the plaintiff's Facial Soap.

This case is not, and could not be, claimed to be res adjudicata as against William A. Woodbury or those in privity with him. However, if it is to be followed by us, its holding would appear to be equally applicable to William A. Woodbury, who was also a party to the 1901 contract.

The second decision is Andrew Jergens Co. v. Woodbury, Inc. (D. C. Del.) 273 F. 952. The complainant in this suit was the plaintiff in the suit at bar; the defendants were three Delaware corporations, Woodbury, Inc., Woodbury System, Inc., and Wm. A. Woodbury Distributors, Inc. The opinion of Judge Morris describes this as a suit to enjoin alleged trade-mark infringement and unfair competition; the Jergens Company asserting a right to the exclusive use of the name "Woodbury" or "Woodbury's" and of the neckless head trade-mark in connection with toilet articles generally, and not solely in connection with the eight commodities specified in the 1901 contract. The claim in respect to toilet articles not specified in the 1901 contract was based upon an assignment in 1909 by the trustee in bankruptcy of the Institute. After an extended examination of the complainant's claims, the judge concluded that its only rights in the trade-mark and in the name "Woodbury" were those acquired by the contract of 1901. He then proceeded to the issue whether those rights had been shown to be infringed. As to two of the defendants there was no evidence of infringement, but Wm. A. Woodbury Distributors, Inc., had, under its own name or that of Wm. A. Woodbury, sold some articles by virtue of rights acquired from him. The judge found that, when selling goods not of the species covered by the 1901 contract, it had used the neckless head trade-mark, but had not used it upon articles which were acquired by complainant under the 1901 contract. Among the articles upon which the trade-mark had not been used were "Wm. A. Woodbury Kleen Odor Soap, Wm. A. Woodbury Sea Maid Soap, Wm. A. Woodbury Olive and Palm Soap, Wm. A. Woodbury Dentate, and Mercuric Iodide Soap." Judge Morris said:

"It cannot be denied that the evidence discloses that some confusion exists in the public mind as to the origin of the articles of the respective parties, yet, so far as I have been able to discover from the evidence, such confusion as does exist arises from the exercise of the legal rights of the respective parties, and not from any wrongful act of the Distributors. Such confusion seems wholly attributable to the fact that two separate and distinct corporations, deriving their title from a common source, have the right to use the same mark and name upon different articles and preparations of the same general class, and

to the further fact that an individual has, subject to certain conditions (observed, I think, by the Distributors), the right to use his name in his business, although his surname may have acquired a secondary meaning, and to transfer that business to a corporation bearing his name."

He then states that the test of infringement was decided in the New York case already discussed and that measured by that test no infringement is here shown. He concludes:

"While I have given this limited detailed consideration to the question of infringement of complainant's rights by the Distributors, I do not understand the complainant to contend that the defendants or any of them have violated or threatened to violate any rights which the Jergens Company claims under the 1901 contract, its charges of infringement having been predicated mainly, if not entirely, upon the hypothesis that it has the sole and exclusive right to use the neckless head trade-mark and the name 'Woodbury' upon toilet articles and dermatological preparations."

Therefore the bill was dismissed. This was affirmed in 279 F. 1016 (C. C. A. 3), in a brief per curiam opinion.

[1] Although William A. Woodbury was not a party to that suit, it is contended that, because the defendants had acquired from him the privilege of using the name "Woodbury," the decision that plaintiff could not enjoin its use by those defendants on their products is res adjudicata in this suit against the present defendant, to whom Woodbury has given a similar privilege in respect to its products. Passing the question whether the doctrine of estoppel by judgment works backward to bind predecessors in title, as well as forward to bind successors in title, it is sufficient to point out that the issues in the two suits are different. First, none of the soaps complained of in the present suit could have been involved in the Delaware case, since their manufacture and the use of the labels complained of began later. Second, there was no contention in that case that plaintiff's rights under the 1901 contract had been violated. Judge Morris expressly so states. Third, there was no finding that the public was deceived into thinking the defendants' goods were identical with complainant's facial soap. Judge Morris stated the opposite.

In the instant case the plaintiff does charge violation of its rights under the 1901 contract, and there is an express finding that the defendant's soaps do deceive the public into believing they are plaintiff's product. The issues and the evidence being different, the doctrine of res adjudicata can find no place. Even if it were conceded that the case held that what Woodbury was then doing was not calculated to deceive the public into supposing that he was selling plaintiff's facial soap, it is difficult to see how that could be conclusive of the issue whether what he is now doing is so calculated to deceive. It has been frequently said that, in controversies of this character, each case must, in a measure, be a law unto itself. See Von Mumm v. Frash (C. C. N. Y.) 56 F. 830, 835; Dennison Mfg. Co. v. Scharf Tag Label & Box Co. (C. C. A. 6) 121 F. 313, 318; Auto Acetylene Light Co. v. Prest-O-Lite Co. (C. C. A. 6) 264 F. 810, 815.

A third case relied upon by defendant is Andrew Jergens Co. v. William A. Woodbury. This was filed in the United States District Court for New Jersey at the same time as the bill in the Delaware district already discussed. It was drawn on the same theory as to plaintiff's rights. After the Delaware decision, the New Jersey bill was dismissed for lack of prosecution by the plaintiff. No evidence was introduced. The issue in the present suit was not, and could not have been, passed upon in that case.

We agree, therefore, with the learned District Court that it is still open, upon proof of facts, for a court of equity to ascertain whether or not a Woodbury, by himself or through another, is deceiving the public into thinking that his soap is plaintiff's Facial Soap or a new brand thereof.

[2, 3] The defendant further contends that the plaintiff should have no relief because it has not come into equity with clean hands. This is predicated upon plaintiff's conduct in (1) having sold cold cream and shaving cream under the name "Woodbury," which it acquired no right to do under the 1901 contract; and (2) having issued without right what it called a "Woodbury Book"; and (3) having changed the original formula of "John H. Woodbury's Facial Soap." The first two matters are not closely enough related to the present issue, unfair competition in respect to Woodbury's Facial Soap, to require consideration. Shaver v. Heller & Merz Co., 108 F. 821, 834, 65 L. R. A. 878 (C. C. A. 8). The last seems to us to be answered by Coca-Cola Co. v. Koke Co., 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. 189. As there said with respect to Coca-Cola, the name has come to mean an article coming from a single source and well known to the community, rather than a com-

pound of substances according to a particular formula. See, also, Le Blume Import Co. v. Coty, 293 F. 344, 360 (C. C. A. 2).

[4] The defendant also argues that it is not responsible for deception which may be practiced in the sale of the soap because it merely manufactured it for William A. Woodbury. Defendant knew, however, that plaintiff manufactured and sold "Woodbury's Facial Soap." If, therefore, the soap as wrapped and delivered by defendant to Woodbury or on his order is likely to deceive the ultimate purchasers and come into unfair competition with plaintiff's product and does do so, we have no doubt that defendant is liable as a contributory infringer. N. K. Fairbank Co. v. Bell Mfg. Co., 77 F. 869, 878 (C. C. A. 2); Von Mumm v. Frash, supra; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 206 F. 611 (C. C. A. 8); Guggenheim v. Cantrell & Cochrane, Limited, 56 App. D. C. 100, 10 F.(2d) 895, 897; Warner & Co. v. Lilly & Co., 265 U. S. 526, 530, 44 S. Ct. 615, 68 L. Ed. 1161; Nims, Unfair Competition (2d Ed.) 667.

[5-7] The learned District Court has found that the plaintiff's Woodbury's Facial Soap was the first to become and remains to-day the best known Woodbury soap on the market; that there is a widespread confusion between the soap of the plaintiff and the Wm. A. Woodbury soaps manufactured by defendant, the public believing that the one source is the original Woodbury and his Institute; and that this confusion has been intentionally caused by William A. Woodbury by subtle advertising and the use of the wrappers complained of. We think the evidence clearly supports these findings. While certain recent advertisements of plaintiff's soap give basis for the argument that plaintiff is emphasizing the name "Woodbury Soap," instead of "Woodbury's Facial Soap," for its product, this falls far short of sustaining the contention that the confusion between plaintiff's and defendant's goods has been brought about by the plaintiff itself. Even in the days when the soap was sold and advertised by the Institute, the name "Woodbury" was the feature of such advertisements. See Jurgens Co. v. Woodbury, 56 Misc. Rep. 404, 106 N. Y. S. 571. From the foregoing findings of fact, injunctive relief should follow, for such conduct is contrary to the law of fair dealing. The principle that "no man has a right to represent his goods as the goods of another" is applicable to misrepresentations by the use of a proper name, as well as by other means, even though the name be one which the defendant would ordinarily be privileged to use.

Rogers Co. v. Wm. Rogers Mfg. Co., 70 F. 1017 (C. C. A. 2); Clark Thread Co. v. Armitage, 74 F. 936, 943 (C. C. A. 2); Walter Baker & Co., Limited, v. Sanders, 80 F. 889 (C. C. A. 2); Vick Medicine Co. v. Vick Chemical Co., 11 F.(2d) 33 (C. C. A. 5); Garrett v. T. H. Garrett & Co., 78 F. 472 (C. C. A. 6); Royal Baking Powder Co. v. Royal, 122 F. 337 (C. C. A. 6); Chickering v. Chickering & Sons, 215 F. 490 (C. C. A. 7); Jergens Co. v. Woodbury, 197 N. Y. 66, 90 N. E. 344. As Mr. Justice Holmes says in Waterman Co. v. Modern Pen Co., 235 U. S. 88, 94, 35 S. Ct. 91, 92 (59 L. Ed. 142): "There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud."

[8] We come, then, to the precise terms of the injunction. We may premise our remarks with the statement that, if any relief is to be given against unfair trading, it should be such as will be effective. See Warner & Co. v. Lilly & Co., supra; Chickering v. Chickering & Sons, supra. The proof shows that the name "Woodbury," as applied to soap suitable for the face, means the long familiar facial soap of the neckless head Woodbury, or his successors in business, and that featuring the name "Woodbury" on defendant's goods leads to confusion. Therefore, to be effective, the injunction should forbid the use of that name as part of the title or designation under which defendant's soap is to be marketed. The cases involving Baker's chocolate—Walter Baker & Co. v. Sanders, 80 F. 889 (C. C. A. 2), and Walter Baker & Co. v. Slack, 130 F. 514 (C. C. A. 7)—go almost this far, though perhaps not quite, since there permission was given to add a distinguishing suffix. In the Chickering Case the defendants were forbidden to use "Chickering" as the name of their piano. The individual has, however, the privilege of using his own name in a manner which is not unfair trading. Therefore Wm. A. Woodbury may say that the soap he sells is manufactured by or for him, provided he does so in a way to avoid confusion, as, for example, by the phrase, "Not connected with the makers of 'Woodbury's Soap.'" See the Waterman Pen Case, and Baker's Chocolate Cases, supra. We should also be justified in requiring that his name should not appear upon the top of the wrapper, but on the sides or bottom. Royal Baking Powder Co. v. Royal, 122 F. 337 (C. C. A. 6).

[9] Similar principles apply to the statements on the wrappers referring to Wm. A. Woodbury as managing director and president of the celebrated Dermatological Institute founded by the late John H. Woodbury.

It is urged that a man is privileged to tell the truth about himself and that this statement does no more. But a half-truth is often as deceptive as a falsehood. For years the names of John H. Woodbury and his Institute have been associated in the public mind with the soap known as Woodbury's Facial Soap, or Woodbury Soap. A reference to these names on the wrapper of a soap made by another Woodbury would necessarily cause confusion as to the source of the article, and we have no doubt the trial judge was right in finding that this was the intended result. See paragraph 7 of the Chickering injunction. Chickering v. Chickering & Sons (C. C. A.) 215 F. 501.

The views we have expressed are in substantial accord with those found in the opinion of the learned District Court. We think, however, that these views are not fully carried out in the phraseology of the injunction. The first two paragraphs quoted in the statement of facts should be modified to read as follows:

From selling, offering for sale, or putting on the market, directly or indirectly, any soap intended for facial use with a wrapper or other advertising on which the name "Woodbury" or "Woodbury's" appears as part of the title or name of the soap, or from using the name "William A. Woodbury," or any abbreviated form thereof, except upon the back or sides of the wrapper or package, and accompanied by a plain disclosure that said William A. Woodbury is not connected with the makers of "Woodbury's Facial Soap," and that his soap is not Woodbury's Facial Soap, or some new brand thereof.

From selling or offering for sale, manufacturing, or wrapping, soap intended for facial use upon the wrapper of which, inclosing advertisement or otherwise, there appears a reference to either "John H. Woodbury" or the "Woodbury Dermatological Institute," unless there shall also appear a plain disclosure that the plaintiff is the successor of said John H. Woodbury and said Institute in the manufacture and sale of "Woodbury's Facial Soap."

[10] The third paragraph should be limited by inserting after the word "soap," where it first appears in said paragraph, the words "intended for facial use."

[11] To the fourth paragraph should be added the following:

Or any other label, package, or representation which by imitation, color, or otherwise is calculated to cause defendant's goods to be passed off as and for the plaintiff's.

In other respects, the decree is correct, and, as thus modified, it is affirmed, with costs to the Andrew Jergens Company.