**CORNING GLASS WORKS, Plaintiff,**

v.

**The JEANNETTE GLASS COMPANY, Morton Springer & Co., Inc., and Sydco Industries, Inc., Defendants.**

**No. 69 Civ. 4566.**

United States District Court
S. D. New York.

Jan. 22, 1970.

Rogers, Hoge & Hills, New York City, Alfred P. O'Hara and Marie V. Driscoll, New York City, of counsel, for plaintiff.

Parker Chapin & Flattau, New York City, for Jeannette Glass.

## OPINION

EDELSTEIN, District Judge.

This action, brought by Corning Glass Works, raises claims of trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and related claims of unfair competition. Jurisdiction over the matter rests upon 28 U.S.C. § 1338 (a) and (b) (1964). Plaintiff has moved for a preliminary injunction and a hearing was held on this motion.

Plaintiff, a corporation organized and existing under the laws of the State of New York with an office and principal place of business in Corning, New York, is, and for many years prior to the acts complained of herein, has been a leading manufacturer and distributor of products made of glass and other materials for industrial, scientific and household use. These products long have been identified by plaintiff by its registered trademark CORNING.

Throughout the years plaintiff has expended considerable sums developing improved glass compositions and creating new uses for those compositions, and, in 1956, it developed a unique glass-ceramic material which it patented and identified by the trademark PYROCERAM. This material is highly resistant to breakage and temperature extremes and vessels manufactured from it may be used as freezing containers as well as cooking pans. First used in the nosecones of guided missiles, plaintiff subsequently adapted the PYROCERAM material for use in a line of commercial cooking and serving vessels which was introduced to the public in 1958. This line of products was well received by consumers, and since its introduction the line has been expanded greatly to include saucepans, skillets, baking dishes, pie plates, chicken fryers, loaf dishes, roasting platters, Dutch ovens, percolators, and teapots.

The vessels are opaque, generally have a creamy white color, and are shaped in a distinctive manner. These items are sold individually and in sets and are now distributed throughout the United States and other countries. Factory sales since 1958 have exceeded $250,000,000.

The commercial products made from PYROCERAM have been sold by plaintiff from the start under another registered trademark, CORNING WARE. In addition, since 1958, the plaintiff has affixed a blue stylized cornflower design to the visible surface of its CORNING WARE products. Plaintiff has filed application to register this design as a trademark, and, in connection with two opposition proceedings, the Trademark Trial and Appeal Board of the United States Patent Office has held that the design signifies origin in plaintiff and is registrable as a trademark.[1] Presently, however, the cornflower design does not have the status of a registered trademark.

Since 1959 plaintiff has expended over one million dollars annually for the advertisement and promotion of its CORNING WARE products. Various forms of visual advertising media, including television and magazines with national circulation, are involved in this campaign, and, in addition, direct mailings and cooking demonstrations given in stores by plaintiff's sales promotion representatives are utilized. In all of these efforts emphasis is consistently given to the unique qualities of CORNING WARE.

Plaintiff's allegations of trademark infringement and unfair competition stem from the sale of glass ovenware products sold under the name of Lady Cornellia and distributed by a company called Lady Cornellia, Inc., which is located in Michigan. Lady Cornellia ovenware is sold in sets containing serving and cooking vessels such as casserole dishes, oven bakers, divided vegetable dishes, and custard cup sets. These vessels are translucent, have a milky white color, and generally are styled in a manner which approaches the shape of CORNING WARE. The ovenware bears on its visible surfaces a stylized blue flower design which, though not precisely like plaintiff's either in the details of the design or the number of flowers used, appears to this court to be sufficiently similar to plaintiff's design so as to create the same general overall impression. The sets are sold in cartons which display pictures of the ovenware bearing the blue flower design and also a prominent separate representation of a flower design. Neither the ovenware itself nor the cartons in which it is sold bear the name of any manufacturer or distributor. While Lady Cornellia ovenware is described on its packages as being a "Cook-'n-Serve Ensemble," it is not made of PYRO-CERAM and does not share the qualities possessed by CORNING WARE.

Lady Cornellia ovenware is sold throughout the United States both directly to the public and to retail stores by itinerant salesmen. Although the cartons in which the ovenware is packed and the accompanying promotional material indicate that the price of a set of Lady Cornellia is $89.50, the ovenware, nevertheless, generally is sold for between ten and fifteen dollars a set. More significantly, Lady Cornellia is represented as being Corning ovenware. Indeed, some of the promotional material and the written guarantees which are distributed to purchasers state that Lady Cornellia ovenware is Corning ovenware. Further, the evidence indicates that the public has, in fact, been deceived, even to the extent that plaintiff has received letters from purchasers of Lady Cornellia complaining about defects in the Lady Cornellia sets and asking that adjustments be made.

The Jeannette Glass Company [Jeannette], a Pennsylvania corporation with

1. The Federal Glass Co. v. Corning Glass Works, 162 U.S.P.Q. 279 (1969); Anchor Hocking Glass Corp. v. Corning Glass Works, 162 U.S.P.Q. 288 (1969).

The *Anchor Hocking* case is presently pending on appeal before the Court of Customs and Patent Appeals.

its principal place of business in Pennsylvania, manufactures the Lady Cornellia sets to the order of Lady Cornellia, Inc. Morton Springer & Co., Inc., a New York corporation with its principal place of business in New Jersey, and Sydco Industries, Inc., also a New York corporation with its principal place of business in New York, sell and distribute this ovenware. Plaintiff has alleged that these defendants, through their use of the name Lady Cornellia and a flower design on the Lady Cornellia ovenware, have infringed plaintiff's trademark and engaged in unfair competition. By its motion for a preliminary injunction plaintiff seeks an order enjoining the defendants, pending this suit, from using in connection with the manufacture, sale, offering for sale, or advertisement of ovenware and other goods and services, the term Lady Cornellia, the flower design now depicted on Lady Cornellia ovenware, and any other term, name, mark or design that includes or resembles plaintiff's trademarks. Defendants Morton Springer & Co. Inc. and Sydco Industries, Inc. have consented to the entry of a preliminary injunction against them. Jeannette opposes plaintiff's motion.

■ Plaintiff's application for the extraordinary remedy of a preliminary injunction has raised all of the relevant factors which the court must consider in the exercise of its sound discretion. Those factors are the probability that plaintiff will eventually succeed at trial, the presence of some irreparable injury to the plaintiff, the possible injury to the defendant, and the public interest. Citizens Committee for the Hudson Valley v. Volpe and Village of Tarrytown, 297 F.Supp. 804, 806 (S.D.N.Y.1969); I. T. S. Industria Tessuti Speciali v. Aerfab Corp., 280 F.Supp. 581, 585 (S.D.N.Y. 1967); 7 Moore, Federal Practice, ¶ 65.04.

Plaintiff has demonstrated the probability that it will ultimately prevail against Jeannette.

■ Generally speaking, plaintiff complains of interference with its exclusive right to use its trademarks and predicates its prayer for relief upon claims of trademark infringement and unfair competition. The law of trademark infringement is really just a part of the law of unfair competition. The former relates to the narrow question of the use of a name or device to distinguish a product and the latter relates to the broader issue of the effect on the consumer of the general impressions created upon him by competing products, each product viewed as a whole. The purpose in either event is to prevent the passing off of one's goods as those of another. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317 (1926); Jean Patou, Inc. v. Jacqueline Cochran, Inc., 201 F.Supp. 861, 863 (S.D.N.Y.1962), aff'd. 312 F.2d 125 (2d Cir. 1963). The basic test for determining complaints of trademark infringement and unfair competition is the same, namely, whether or not any appreciable number of ordinary purchasers are likely to be confused as to the source of the products which they are buying. Atlantic Monthly Co. v. Frederick Ungar Publishing Co., 197 F.Supp. 524, 529 (S.D. N.Y.1961). The name Lady Cornellia employed to denote sets of white ovenware similar in appearance to CORNING WARE, to which has been affixed a blue flower design similar to plaintiff's design, together with the misrepresentations that have been made by individual distributors of this ovenware and the resulting confusion, persuades this court of the likelihood that plaintiff will be able to demonstrate at trial that it is the victim of both trademark infringement and unfair competition.

Jeannette maintains, however, that plaintiff is not entitled to a preliminary injunction against it because plaintiff has not demonstrated the likelihood of the ultimate success of the case against Jeannette. The major thrust of Jeannette's argument is that plaintiff has not shown that Jeannette is responsible for

any of the harm which plaintiff claims to have suffered. Jeannette simply is a manufacturer. In this posture its sole function has been to manufacture the ovenware, affix to it the flower design, and manufacture the cartons in which the Lady Cornellia sets are packaged. All of this is done pursuant to the instructions of Jeannette's customer, Lady Cornellia, Inc. At no time while the Lady Cornellia packages are in the custody or control of Jeannette is any reference to plaintiff printed on the cartons. Jeannette denies any intent whatsoever to deceive anyone, and, in fact, asserts that it has done nothing to give the buying public the impression that the glassware manufactured by it is the product of plaintiff.

Plaintiff, though, contends that in truth Jeannette is no innocent. According to plaintiff, the founder of Lady Cornellia, Inc., Mr. Paul Bruseloff, could not have launched his enterprise without the assistance of Jeannette, other glass manufacturers having declined to deal with him because of his poor credit rating. Further, plaintiff alleges both that Jeannette is closely allied with Mr. Bruseloff, at least to the extent that Mr. Bruseloff has been given shares of Jeannette stock, and that Jeannette is in contact with storekeepers who have purchased Lady Cornellia. Jeannette, however, denies these allegations. The resolution of these factual issues must await trial.

 For purposes of this motion, what is more important is that, assuming that Jeannette is not as intimately connected with Lady Cornellia, Inc. as the plaintiff would have this court find, Jeannette may still be liable as a contributory infringer for the interference with plaintiff's use of its trademark caused by the distribution of Lady Cornellia ovenware. One whose manufactured goods bear marks which infringe those of another or which are confusingly similar to the product of another may be held liable as a contributory infringer. John B. Stetson Co. v. Stephen L. Stetson Co., 85 F.2d 586, 588

(2d Cir.) cert. denied 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936); Reid, Murdoch & Co. v. H. P. Coffee Co., 48 F.2d 817 (8th Cir.) cert. denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 329 (1931); Andrew Jergens Co. v. Bonded Products Corp., 21 F.2d 419, 424 (2d Cir. 1927), cert. denied 275 U.S. 572, 48 S.Ct. 204, 72 L.Ed. 432 (1928); Mattel Inc. v. Goldberger Doll Mfg. Co., Inc., 200 F. Supp. 517, 519 (E.D.N.Y.1961); Stix Products, Inc. v. United Merchants & Mfrs. Inc., 295 F.Supp. 479, 499–500 (S.D.N.Y.1969); Restatement of Torts, § 739 (1938). Jeannette argues, though, that manufacturers can be held liable as contributory infringers only when they designedly furnish dealers with the means for consummating a fraud and that this is not such a case. The scope of the contributory infringer doctrine, however, is not so narrowly circumscribed. As Judge Wyzanski put it, in Coca-Cola Co. v. Snow Crest Beverages, 64 F.Supp. 980 (D.Mass.1946), aff'd. 162 F.2d 280 (1st Cir.), cert. denied 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947), a defendant's accountability under the contributory infringer doctrine " * * * turns on the issue whether a reasonable person in the defendant's position would realize either that he himself had created a situation which afforded a temptation to or an opportunity for wrong by l'homme moyen sensuel or was dealing with a customer whom he should know would be peculiarly likely to use the defendant's product wrongfully." 64 F.Supp. at 989. For example, Andrew Jergens Co. v. Bonded Products Corp., supra, was an action for trademark infringement and unfair competition brought by the manufacturer of "Woodbury's Facial Soap" against another soap manufacturer. The defendant in that case manufactured and packaged soap for and according to the instructions of its customer, William A. Woodbury. The soap supplied by the defendant was marketed under various labels all of which had in common a prominent reference to the name Woodbury. Widespread confusion between plaintiff's soap

and that manufactured by defendant existed in the public mind,, and this confusion was found to have been intentionally caused by defendant's customer. In affirming the grant of a preliminary injunction against defendant, the Court of Appeals rejected the defendant's argument that, being merely the manufacturer, without more, it could not be held responsible for the confusion caused by William A. Woodbury. The Court said "If, therefore, the soap as wrapped and delivered by defendant to Woodbury or on his order is likely to deceive the ultimate purchasers and come into unfair competition with plaintiff's product and does do so, we have no doubt that defendant is liable as a contributory infringer." 21 F.2d at 424 (citations omitted) [2]

Regarding the facts of the case at bar, the ovenware manufactured by Jeannette, both in name and appearance, bears such a marked resemblance to plaintiff's product that the similarity is difficult to ascribe to mere chance. In these circumstances, the prospect that a jury could conclude that Jeannette should have realized that manufacture of Lady Cornellia ovenware created an opportunity for misuse cannot be dismissed as insubstantial.

■■ Relating also to its responsibility for the confusion caused by the marketing of Lady Cornellia ovenware, Jeannette argues that in fact the public does not confuse Jeannette's product as being plaintiff's. Rather, any deception suffered by purchasers, Jeannette contends, is solely the result of misrepresentations made by individual salesmen not employed by Jeannette. In support of this contention, Jeannette relies on quotations from various of the affidavits submitted by plaintiff in which purchasers of Lady Cornellia aver that their doubts about the source of the ovenware were overcome by the salesmen and their promotional materials. This line of argument cannot stand examination. First, adopting Jeannette's own approach, the argument fails because several of the affiants state that, in fact, before making their purchases, they actually examined some of the Lady Cornellia dishes and this examination influenced their conclusions that what was being offered was plaintiff's product. Second, even if all of plaintiff's affidavits could be construed as Jeannette suggests, the argument is not persuasive since the ultimate test for infringement and unfair competition is the likelihood of confusion, not actual confusion. *E. g.*, Maternally Yours v. Your Maternity Shop, 234 F. 2d 538, 542 (2d Cir. 1956); I. T. S. Industria Tessuti Speciali v. Aerfab Corp., *supra* 280 F.Supp. at 586. These salesmen, however ingenious, surely could not have succeeded unless the product they were selling substantially resembled CORNING WARE.

■ Strictly speaking, while plaintiff's claim of infringement of its registered trademarks depends upon Federal law, the claim of infringement of its common law cornflower trademark and the claim of unfair competition depend upon state law. See Flexitized Inc. v. National Flexitized Corp., 335 F.2d 774, 781 (2d Cir. 1964), cert. denied 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1954); Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 540 n. 1 (2d Cir. 1956); Field Enterprises Educational Corp. v. Cove Industries, Inc., 297 F. Supp. 989, 995 (E.D.N.Y.1969); Thomson Industries, Inc. v. Nippon Thompson Co., 298 F.Supp. 466, 478 (E.D.N.Y. 1968). The court has attempted no distinction in its discussion of the merits of this case but has relied exclusively on Federal case law. Counsel also have attempted no distinction but have relied exclusively on Federal case law in their discussions. The general doctrines de-

---

2. Also, see John B. Stetson Co. v. Stephen L. Stetson Co., *supra*, in which a manufacturer of hats bearing an infringing mark was held liable as a trademark infringer.

veloped by Federal and New York cases[3] relating to trademark infringement and unfair competition are virtually identical. *See, e. g.,* Dell Publishing Co. Inc. v. Stanley Publications, Inc., 9 N.Y.2d 126, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961). As far as the specific doctrine of contributory infringement is concerned, while the New York courts have not been presented with the need to define in full the breadth of this doctrine, it is clear that contributory infringement is a recognized part of New York law. Oneida Ltd. v. National Silver Co., 25 N.Y.S.2d 271, 276 (Sup.Ct.1940); Bengue v. American Pharmaceutical Co., Inc. 155 Misc. 602, 280 N.Y.S. 153 (Sup.Ct. 1935), aff'd. 250 A.D. 709, 294 N.Y.S. 509 (1st Dept. 1937). It is this court's view, that, if faced with a situation such as the case at hand, the New York courts would apply the doctrine of contributory infringement in a manner consistent with the conclusions reached in the Federal cases.

Turning now to the other factors which must be considered on this motion, the court finds that the injury to plaintiff, the injury to defendant should an injunction issue, and the interest of the public in this matter, on balance, weigh in favor of granting the motion. It is clear that plaintiff's reputation and good will, acquired only after much effort and advertising expense, have been damaged. Lady Cornellia ovenware has neither the thermal stability nor the mechanical strength possessed by CORNING WARE. Yet, Lady Cornellia ovenware is passed off as being plaintiff's product carrying plaintiff's guarantee. The obvious consequences have followed: plaintiff has received complaints from purchasers of Lady Cornellia and requests that broken pieces be replaced. Further distribution

of Lady Cornellia ovenware only can aggravate this situation.[4]

 On the other hand, although bond required by Rule 65(c), F.R.Civ.P. it discounts the seriousness of the injury to plaintiff's reputation, Jeannette avers impaired by the grant of a preliminary injunction against it. While this may be (it is certainly speculative), it does not outweigh the injury suffered by plaintiff. Moreover, were the court to accept ufacturing industry would be seriously that its own reputation in the glass manthis as a ground for refusing to issue an injunction otherwise justified in all respects it would mean that applications for temporary relief would depend upon the fortuity of whether a particular defendant was well enough established in its field to have acquired a reputation of its own. Jeannette also contends that a preliminary injunction would cause it to loss will be fully compensable out of the should Jeannette ultimately prevail, this lose a substantial portion of its business. This possible loss of business is neither defined nor documented. If, however, what is meant is that Jeannette will be restrained pending the outcome of this suit from producing Lady Cornellia ovenware, then in light of the court's view of the probable outcome of this action, this is a loss which Jeannette may justifiably be called upon to bear. In any event, 7 Moore, Federal Practice, ¶ 65.10.

The public's interest must also be considered. While plaintiff is injured when consumers purchase Lady Cornellia ovenware believing it to be CORNING WARE, consumers, too, are being directly victimized. An injunction is thus in the public interest; only if the distribution of Lady Cornellia ovenware is stopped can further fraud be avoided.

3. Although the acts of unfair competition complained of by plaintiff occurred in many states, under the conflicts of laws rules of New York, the court concludes that New York substantive law is applicable. See Babcock v. Jacksen, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 279, 95 A.L.R.2d 1 (1963) and its progeny.

4. The court is unpersuaded by Jeannette's argument that plaintiff's past sales record belies the fact of a present injury to plaintiff's reputation.

Finally, Jeannette makes one additional argument in opposition to plaintiff's motion. The blue flower design which is affixed to the Lady Cornellia ovenware has been openly used by Jeannette on other items since 1961. In fact, in that year, products bearing this design were advertised and illustrated in the catalogue of Sears Roebuck & Co. on a page facing the page on which CORNING WARE was similarly advertised and illustrated. At least since that time, Jeannette contends, plaintiff must have known of Jeannette's use of the design on glassware. Still, during all of the intervening years plaintiff never made an oral or written complaint to Jeannette. Thus, Jeannette concludes, there can be no reasonable justification now for the urgent relief requested by plaintiff. If the only ground for relief asserted in this action were trademark infringement of plaintiff's common law trademark, this argument might bear weight. However, plaintiff has asserted other claims of infringement and a separate claim of unfair competition as well, and all these claims are predicated on the sale of ovenware resembling plaintiff's and called Lady Cornellia. Sales of Lady Cornellia apparently began only about one year ago. Jeannette's identity as the manufacturer of that ovenware was not discovered by plaintiff until July of 1969, only a short time before this action was commenced. Accordingly, there is no basis in fact for Jeannette's argument; the plaintiff acted with due diligence in the circumstances of this case.

In sum, the court is presented here with a case in which blatant acts of unlawful interference with the exploitation of plaintiff's products have occurred. The probability that Jeannette ultimately may be found responsible for this interference is not insubstantial. Plaintiff's good will and reputation clearly have been injured while any injury that Jeannette may suffer as the result of an injunction does not tip the scale in its favor. And protection of the public requires injunctive relief.

Plaintiff's motion for a preliminary injunction is granted.

Settle order on notice within five days.

The foregoing constitutes the required findings of fact and conclusions of law.