**POWER TEST PETROLEUM DISTRIBUTORS, INC., Plaintiff,**

v.

**MANHATTAN & QUEENS FUEL CORP., Tovya Soltanovich, Arkady Shuster, Jerry Nol, C & K Petroleum Transporters, Inc., Samuel Naamad and Tayfun H. Oncer, Defendants.**

No. 82 Civ. 2822.

United States District Court, E.D. New York.

Dec. 3, 1982.

Robert G. Delgadio, Garden City, N.Y., for plaintiff.

Carl S. Levine, P.C., Garden City, N.Y., for defendant Manhattan & Queens Fuel Corp.

ORDER

McLAUGHLIN, District Judge.

Plaintiff, a petroleum distributor, owns and operates a network of service stations in Massachusetts, Pennsylvania, and the tri-state area, and sells petroleum under the federally-registered "POWER TEST" trademark.[1] This action, brought under the Lanham Act, 15 U.S.C. § 1053 *et seq.*, charges defendants with infringement of

---

1. The trademark is registered with the U.S. Patent Office. (Plaintiff's Exhibits A and B, Order to Show Cause for a Preliminary Injunction) Defendants do not dispute the validity of plaintiff's mark.

plaintiff's mark.[2] Defendant Manhattan & Queens· Fuel Corporation ("Manhattan & Queens") has moved this Court for a dismissal of the claim against it, Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment, Fed.R.Civ.P. 56. For the reasons developed below, the motions are denied.

## FACTS

Unlike several other major oil companies, plaintiff is not a petroleum refiner. It simply purchases refined petroleum from various sellers, operating on the "spot market." Petroleum is purchased on a day-to-day basis from the seller who affords the most favorable terms. Preliminary Injunction Hearing, Tr. at 22. Plaintiff then distributes the product to over 500 stations that display the "POWER TEST" mark. A few of these stations are owned by plaintiff; most, however, are independently owned and operated. Plaintiff and these latter stations stand in a franchisor-franchisee relationship: the station owners agree to purchase only POWER TEST petroleum, and receive, in exchange, plaintiff's financial support, and use of its trademark.

Defendant Manhattan & Queens also purchases petroleum from refiners on the "spot market," and sells the product to retailers (service stations). The parties are in substantial agreement as to the foregoing.

There are serious disputes, however, as to several important factual issues. First, plaintiff bottoms its complaint against Manhattan & Queens on alleged delivery and sales of non-POWER ·TEST petroleum to the POWER TEST stations named in the complaint. Manhattan & Queens denies that such sales and deliveries have been made. Defendant's Rule 9(g) statement, paragraphs 7 & 8; Affidavit of Joseph Macchia, paragraphs 29 thru 31.

Second, plaintiff states that, as a matter of fact Manhattan & Queens knew that POWER TEST stations would be acting in violation of their franchise agreement by dispensing non-POWER TEST petroleum. Affidavit of Herbert Wechsler in Opposition to Defendant's Motion, paragraphs 7 thru 17. Manhattan & Queens, as stated above, denies that sales to the named stations have occurred; it follows that plaintiff's second point need not be addressed.

When a motion is made under Rule 12(b)(6), the factual allegations of the nonmoving party must be taken as true. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Brager & Co. v. Leumi Sec. Corp.,* 429 F.Supp. 1341, 1344 (S.D.N.Y.1977). Therefore, Manhattan & Queens does not insist, for present purposes, that its own version of the facts is correct. It contends, rather, that even if the facts are precisely as plaintiff alleges, there is no legal theory under which plaintiff could prevail.

## DISCUSSION OF LAW

Manhattan & Queens correctly notes that the Lanham Act, on its face, applies only to either the unauthorized use of a registered trademark, or to the unauthorized application to a product or container of such a mark. 15 U.S.C. § 1114(1); Defendant's Memorandum of Law in support of Motion

---

**2.** 15 U.S.C. § 1114 provides, in pertinent part:

(1) Any person who shall, without the consent of the registrant—

  (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

  (b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of goods or services on or in connection with which such is likely to cause mistake, or to deceive;

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Plaintiffs have also asserted two pendent state claims: *viz.,* false advertising, §§ 350–a and 350–d of New York General Business Law (N.Y.Gen.Bus.Law); and anti-dilution, N.Y. Gen.Bus.Law § 368–d. Resolution of the Lanham Act portion of the present motion, however, renders consideration of the state claims pleonastic.

to Dismiss or for Summary Judgment at 4. By its language, the Lanham Act reflects the goal of preventing one from misleading the public by passing off the goods of another as his own. *See Corning Glass Works v. Jeanette Glass Co.,* 308 F.Supp. 1321 (S.D.N.Y.), *aff'd,* 432 F.2d 784 (2d Cir.1970). If such unauthorized use or application were indeed the sole evil against which the statute affords protection, Manhattan & Queens could not be liable. The petroleum itself, of course, bears no trademark, and plaintiff has not alleged that Manhattan & Queens is in any way using the POWER TEST mark.

As Manhattan & Queens itself recognizes, however, (Memorandum of Law at 8–10), the doctrine of contributory infringement has developed as a judicial gloss on the infringement provision of the Lanham Act. Under this doctrine, a defendant is liable for infringement of plaintiff's registered mark if defendant knowingly "supplied the ammunition" that allowed the wrongful user to complete the infringement. *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 496 (S.D.N.Y.1968).

The doctrine of contributory infringement has recently been articulated by the United States Supreme Court:

> As the lower courts correctly discerned, liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer or distributor does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, *or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement,* the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit. *See William R. Warner & Co. v. Eli Lilly & Co., supra* [265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161]; *Coca-Cola Co. v. Snow Crest Beverages, Inc., supra* [64 F.Supp. 980 (D.Mass.

1946) ]; *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* —— U.S. ——, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (emphasis added).

Thus, a determination of liability for contributory infringement turns on the factual issue of knowledge: Assuming defendant had no control over subsequent entities in the chain of distribution, did it nonetheless have reason to be aware that plaintiff's mark was being infringed? That question remains unanswered in this case. Therefore, because of the existence of this material issue of fact, defendant's motion to dismiss may not be granted. It is beyond cavil that such a motion should only be granted when it reasonably appears that plaintiff can establish no facts in support of its claim. *Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284 (2d Cir.1971).

Manhattan & Queens attempts to avoid this result by drawing the Court's attention to perceived distinctions between the cases that have found defendant liable for contributory infringement and the present motion. Thus, for example, defendant notes that *Stix, supra,* involved a finding that promotional material supplied by the distributor was used by the reseller to infringe the plaintiff's mark. Defendant also notes that, in the typical case, the party held liable under the doctrine of contributory infringement had presented the product to the infringing party in a condition that was likely to cause confusion or deception. *Andrew Jergens Co. v. Bonded Prods. Corp.,* 21 F.2d 419 (2d Cir.1927); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.,* 497 F.Supp. 947 (S.D.N.Y.1968); *Corning Glass Works v. Jeanette Glass Co.,* 308 F.Supp. 1321 (S.D.N.Y.1970), *aff'd,* 432 F.2d 784 (2d Cir.1970).

Defendant apparently fails to apprehend that the above-cited cases do not involve a legal analysis different from that employed by the Supreme Court in *Inwood, supra.* It simply turns out, as might be expected, that the courts encounter little difficulty in finding the knowledge required to support a finding of contributory infringement when the alleged infringer has passed the product

along the distributive chain in a condition likely to create confusion. It is entirely possible, however, that a defendant who merely supplied an innocent-looking product to one who ultimately infringed plaintiff's mark could be charged with knowledge of the primary infringer's intent. In such a case, the supplier would, under *Inwood,* be liable as a contributory infringer.[3]

Indeed, the seminal case on contributory infringement, *Coca-Cola Co. v. Snow Crest Beverages, Inc.,* 64 F.Supp. 980 (D.Mass. 1946), *aff'd,* 162 F.2d 280 (1st Cir.), *cert. denied,* 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947), conclusively demonstrates that one may be held liable as a contributory infringer, notwithstanding the fact that one does nothing to assist an infringing party. In *Coca-Cola v. Snow Crest, supra,* defendant conducted a promotional campaign designed to increase the sales of its product, Polar Cola, to bars and inns. Some of the establishments decided to save money by illegally substituting defendant's product for that of plaintiff when a customer requested a "rum and Coca-Cola." Judge Wyzanski found that plaintiff had failed to demonstrate that Snow Crest, manufacturer of Polar Cola, had reason to know that its product was being illegally substituted for Coca-Cola. *Id.* at 988. Significantly, however, the Court also found that defendant did have a duty "to avoid knowingly aiding bars which purchase defendant's products from marketing those products in such a manner as to infringe plaintiff's trade-mark. It would also have been a breach of duty for defendant to have continued sales to bars without taking some precautionary measures if it had known, or a normal bottler would have known, that most bar customers specifically ordered Coca-Cola and that consequently a normal bottler would infer ... that many bars ...

were using defendant's product as a substitute in the case of specific orders of Coca-Cola." *Id.* at 989.

Plainly, the liability of Manhattan & Queens turns on what it knew, or should have known, when it delivered petroleum to POWER TEST stations.[4] Plaintiff must be granted an opportunity to explore the issue of defendant's knowledge. Accordingly, the motion to dismiss, or for summary judgment, is denied.

SO ORDERED.

---

**3.** Manhattan & Queens protests that a finding of liability in this case would be tantamount to holding it to the standard of an insurer. I assume defendant believes that plaintiff is seeking to impose on it a duty to become aware of any and all agreements that exist between plaintiff and its franchisees. Again, Manhattan & Queens may only be found liable if a determination is made that, although aware of inci-

dents of infringement by individual station owners, Manhattan & Queens nonetheless continued to supply non-POWER TEST petroleum to such owners.

**4.** I merely reiterate here that it must be assumed, for purposes of resolving this motion, that plaintiff's factual allegations are true.